MARY REESIDE, EXECUTRIX OF JAMES REESIDE, PLAINTIFF IN ERROR, *v.* ROBERT J. WALKER, SECRETARY OF THE TREASURY OF THE UNITED STATES.

According to the practice in Pennsylvania, where a defendant pleads set-off, the jury are allowed to find in their verdict the amount that the plaintiff is indebted to the defendant, and according to their mode of keeping records this result is entered by way of note; e. g. " new trial refused and judgment on the verdict."

Although this may be a good record in the courts of Pennsylvania, it does not follow that it is so in the courts of the United States.

The effect of such a judgment, that the plaintiff is indebted to the defendant, is merely to lay the foundation for a *scire facias* to try this new cause of action.

Where the United States were the plaintiffs, and a verdict was rendered that they were indebted to the defendant, and an application was made for a mandamus to compel the Secretary of the Treasury to credit the defendant upon the books of the Treasury with the amount of the verdict, and to pay the same, the mandamus was properly refused by the Circuit Court. For a mandamus will only lie against a ministerial officer to do some ministerial act where the laws require him to do it and he improperly refuses to do so.

Besides, there was no appropriation made by law, and no officer of the government can pay a debt due by the United States without an appropriation by Congress.

To sanction a judgment under a plea of set-off would virtually be allowing the United States to be sued, which the laws do not allow.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington.

James Reeside, in his lifetime, was one of the contractors with the Post-Office Department for the transportation of the mail, and claimed sundry extra allowances, which were not al-

lowed by the Department. In consequence, thereof, a dispute arose between the parties, and in October, 1839, the United States brought an action in the Circuit Court for the Eastern District of Pennsylvania against Reeside, for the sum of $ 32,709.62, which they claimed to have overpaid him.

The whole history of this suit is summed up in the following transcript of the record : —

" In the Circuit Court of the United States, in and for the Eastern District of Pennsylvania, in the Third Circuit, October Session, 1839.

" THE UNITED STATES OF AMERICA v. JAMES REESIDE.

" Summons case. — Real debt $ 32,709.62, as per statement of account from Auditor Post-Office Department, as late mail contractor. Exit 5th Sept. 1837.

" 1837, Oct. 11. — Returned, ' Served.'

" 1840, January 25. — Interrogatories filed and ruled for comm'n e. p. defendant to Bedford, Pennsylvania, sec. reg.

" 1840, February 4. — Rule on plaintiffs to declare, sec. reg.; 18 interrogatories filed and rule for comm'n e. p. defendants to Hollidaysburg, Pennyslvania, sec. reg.

" 1840, March 2. — Narr. filed; 6th, defendant pleads payment; replication *non solvit*, and issues and rule for trial by special jury and ca.

" 1841, March 2. — Agreement for taking the deposition of Richard M. Johnson, a witness for defendant at the city of Washington, on forty-eight hours' notice to the Auditor Post-Office Department, filed.

" 1841, August 4. — Agreement taking deposition of R. M. Johnson, at Frankfort, Kentucky; and interrogatories filed; deposition of R. M. Johnson filed.

" 1841, October 22. — Defendant pleads *non assumpsit* and set-off and issues and ca.; and now [a] jury being called, come, to wit, Edward C. Biddle, S. M. Loyd, Thomas Connell, George McLeod, Michael F. Groves, John C. Martin, William C. Hancock, Joseph Harrison, Jr., Joseph Parker, William Parker, William Gibson, and Thomas Cook, who are respectively sworn or affirmed, &c.; deposition of Pishey Thompson filed.

" 1841, December 6. — And now the jurors aforesaid, on their oaths and affirmations aforesaid, respectively do say, that they find for the defendant, and certify that the plaintiffs are indebted to the defendant in the sum of $ 188,496.06 ; judgment *nisi*. On motion of Messrs. Read & Cadwallader, for plaintiffs, for a rule to show cause why a new trial should not be granted, and for leave to move for such new trial, on exceptions to the ruling of the court on questions of evidence and matters of

Reeside *v.* Walker.

law, embraced in the charge of the court, without such motion. being deemed a waiver thereof, the motion is received; notice thereof to be given to the opposite counsel; returnable 1st Monday in January next.

"1841, December 9.— Reasons for a new trial filed.

"1842, May 12.— Motion for new trial overruled; new trial refused, and judgment on the verdict; copy of assignment, James Reeside to John Grey; and copy of notice, James Reeside to Postmaster-General, filed.

"1842, July 27.— Præcipe for writ of error filed.

"UNITED STATES, *Eastern District of Pennsylvania, sct.*

"I certify the foregoing to be a true and faithful transcript of the docket entries in the above-named suit.

"In testimony whereof, I have hereunto subscribed my name and affixed the seal of said court at Philadelphia, this 4th day of January, A. D. 1847, and in the seventy-first year of the independence of the said United States.

"GEORGE PLITT."

In September, 1842, James Reeside died, and Mary Reeside, his widow, became his executrix.

On the 4th of November, 1848, Mary Reeside filed a petition in the Circuit Court of the United States for the District of Columbia, in and for the county of Washington. The petition stated the above facts, and with it was filed the transcript of the record as it has been set forth. It concluded as follows:—

"Wherefore, your petitioner does respectfully pray, that your honors, the premises considered, will award the United States writ of mandamus to be directed to the said Robert J. Walker, Secretary of the Treasury Department of the United States, commanding him,—

"First. That he shall enter or cause to be entered upon the books of the Treasury Department of the United States, under date of May 12th, 1842, a credit to the said James Reeside of the sum of $188,496.06.

"Second. That he shall pay to your petitioner, as executrix as aforesaid, the said sum, with interest thereon from the said 12th day of May, 1842.

"And your petitioner shall ever pray, &c.

"MARY REESIDE."

The Circuit Court ordered that the motion for a mandamus be overruled, and the prayer of the petitioner rejected. Whereupon Mary Reeside sued out a writ of error, and brought the case up to this court.

It was argued by *Mr. Goodrich,* for the plaintiff in error, and *Mr. Crittenden* (Attorney-General), for the defendant in error.

*Mr. Goodrich,* for the plaintiff in error, made the following points.

The application for relief, in the court below, was of double aspect. First, that the Secretary of the Treasury be directed to enter to the credit of James Reeside, under proper date, upon the books of the Treasury Department, the amount of the verdict and judgment aforesaid. Second, that the Secretary of the Treasury be directed to pay the amount of such credit, with interest thereon, to the complainant.

Is the plaintiff in error entitled to the relief sought, or any part thereof? It may be urged, that the United States cannot be sued. As a general proposition, it may be admitted. It is equally true that the United States may be sued with its own consent. United States *v.* McLemore, 4 Howard, 288; Hill *v.* United States, 9 Howard, 389. Its officers, in their representative capacity, may be sued with consent of the government. The right of the citizen against the government may be judicially ascertained, if the legislative department so provide; and such adjudication, rightfully had, must be conclusive, unless express provision to the contrary is made. The judiciary may be authorized to determine the right, to pass a judgment or decree which shall bind the government, and may not have authority to issue execution against the government or its property. It is equally true that it is the duty of every government, especially of the United States, to provide some mode for the ascertainment and liquidation of the claims of the citizen against the government. The mode adopted in England and in this country, in many cases, is by authorizing a resort to the judiciary; sometimes such resort is permitted in the first instance, but generally after an unsuccessful application to some department or commission. Wherever the United States have authorized recourse to the judiciary, and the right has been contested or settled by the judiciary in the mode prescribed, such judicial action upon the right — I speak not of the remedy — must be in its nature conclusive and final. Whenever and wherever a judicial tribunal is authorized to pass upon any matter or right, and it does pass upon it, it must be regarded *res adjudicata,* subject only to be reversed on error. The United States, in harmony with its duty, has, in many instances, authorized the judiciary to determine controverted questions between the citizen and the government. Some of those cases are submitted, for the purpose of analogy, and for the deductions which they afford in aid of the construction,

which will be relied upon, of the statutes which must control the present case.

4 Stat. at Large, 284, May 23, 1828, ch. 70, § 6. In which provision is made, that private land claims in Florida, not finally settled by the commissioners, may be decided by the judge of the Superior Court for the district within which the lands are, provided the claims shall have been previously presented for allowance to the commissioner, register, or receiver. Sect. 7 provides an appeal to the Supreme Court of the United States. Sect. 13, that the decisions shall be final between the United States and the claimant. Under this statute, an appeal in one case was taken to this court, but dismissed, because the original application was not made within the time prescribed. United States v. Marvin, 3 Howard, 620. The power of the court to pass a valid decree upon a proper application was not doubted.

3 Stat. at Large, 691, May 7, 1822, ch. 96. An act to empower the city of Washington to drain the public grounds. In sect. 6 it is provided, that the proprietors may institute a bill in equity in the nature of a petition of right, against the United States, in the Circuit Court. Sect. 8, suits to be conducted according to the rules of courts of equity. Sect. 9, an appeal may be taken to the Supreme Court, and if no appeal, the judgment of Circuit Court to be final. Van Ness v. City of Washington and United States, 4 Peters, 232, is a case under this statute. On page 266, Mr. Taney, *arguendo*, says: " It submits their rights to judicial decision. In submitting to such a trial and decision they (the government) place themselves on the ground of contract, and waive any rights their sovereignty might give. For it would be absurd, indeed, to suppose that the United States gave to the court the mere power of hearing a cause, when that hearing could produce no judicial result." The court, Mr. Justice Story giving the opinion, say: " It is not necessary to consider whether the bill is so framed as to enable the court to pass a definitive decree against the United States"; thus by implication admitting the power of the court to pass a binding decree in a proper case. Passing from these general considerations, I submit, —

I. The verdict and judgment of the court thereon, in the Circuit Court of Pennsylvania, in the suit United States v. James Reeside, is a legal adjudication that the United States, at the time of its rendition, were indebted to him in the sum therein named, the validity of which is not open to contestation, except upon writ of error; that plaintiff is now entitled to have an entry to his credit, of the amount so decreed, upon the books of the Treasury Department.

This position results in an inquiry into the extent of the jurisdiction of the Circuit Court of Pennsylvania. I submit that the court had jurisdiction to pass, with the aid of the jury, upon all claims presented by Reeside, which he had previously exhibited to the proper department, and which had been by such department disallowed. The jurisdiction may be sustained upon two grounds : —

1st. The court rightfully exercised jurisdiction under a provincial statute of Pennsylvania, passed in 1705, known as the Defalcation Act. This act says : "If it appears to the jury that the plaintiff is overpaid, then they shall give in their verdict for the defendant, and withal certify to the court how much they find the plaintiff to be indebted, or in arrear to the defendant more than will answer the sum or debt demanded, and the sum or sums so certified shall be recorded with the verdict, and shall be deemed as a debt of record. And if the plaintiff fail to pay, defendant for recovery shall have *scire facias*, and have execution for the same with costs of that action." Has this act been adopted by the Circuit Court of the United States within the District of Pennsylvania, or by the Judiciary Act of the United States ? If so, has it been adopted in, or can it be applied to, cases in which the United States are a party ? In suits between citizens litigating in the Circuit Court of Pennsylvania, there can be no doubt it is obligatory. If not applicable to cases in which the United States are parties, such result follows from one of two causes ; — first, the United States are not bound by State statute, or by any statute, unless specially named ; second, because the court had no power to issue execution against the United States ; in other words, no part of this act is applicable; because some of its provisions may not be. The first can have no influence, because the United States, when it voluntarily becomes a suitor in any court, must submit, and does submit, to the same rules and mode of proceeding which apply to any other suitor. The practice and rules of the court constitute the law of the court. The government or sovereign, when a suitor, is bound by the same rules of evidence as any other suitor, unless there is some statute provision to the contrary, except in some matters of presumption, not applicable to this inquiry. These principles are sustained by the reasoning of the court in the case of King of Spain *v.* Hullet et al., 1 Clark & Finnelly, 333, which was a suit brought by a foreign sovereign in his political capacity. The court held he was bound by the rules and practice of the court which were applicable to ordinary suitors, and like them was held to answer a cross-bill personally, and upon oath. As to the second supposed reason, the ina-

.Reeside *v.* Walker.

bility of the court to issue execution or *scire facias* against the United States, it does not follow that the right cannot be determined because there is no remedy, or a different one than that prescribed by the act. That this act was regarded by the Circuit Court as one of its modes or rules of proceeding, adopted by rule or long practice, or as embraced in the Judiciary Act, adopting the course of proceedings of the several State courts, is apparent from the record exhibited in the printed case. I do not, however, consider it of any consequence whether this colonial act is applicable or not.

2d. The jurisdiction of the Circuit Court of Pennsylvania is sustained and conferred by statutes of the United States. It will be admitted, I presume, that the Circuit Court had a right to pass upon some of the items which James Reeside set up. It must be granted, I suppose, that, so far as the court and jury rightfully passed upon any items of credit claimed, the adjudication is conclusive, and cannot be again a proper subject of contestation as to the question of right. Items thus allowed become debts of record. The accounting officers of the government are bound to pass upon all claims presented to them, without reference to the number or amount of the debits of the government against the party applying. If a suit is subsequently instituted by the United States against a supposed debtor, he has a right to present, for the consideration of the court and jury, all items for which he had previously claimed a credit at the department, without any reference to the number or amount of the debits against him. There is and can be no other limit, so far as the right is concerned. After the decision of the court and jury, the items allowed by them go to the credit of the party upon the books of the department; they constitute credits, if I may so say, judicially placed upon the books of the department, and when thus placed there by the decree of the court to which they had been referred, they cannot be erased, but must be considered as definitely settled. I now proceed to inquire whether these views are sustained by the statutes, and to what extent they authorize the court to adjudicate upon credits claimed by a defendant, against whom the United States have instituted a suit.

1 Stat. at Large, 65, Sept. 2, 1789, ch. 12, is an act to establish the Treasury Department; by the third section of which e comptroller shall direct prosecutions for debts that are or shall be due to the United States. By the sixth section it is made the duty of the register to keep an account, &c., of all debts due to or from the United States.

1 Stat. at Large, 73, Sept. 24, 1789, ch. 20. The Judiciary Act, the eleventh section of which authorizes the Circuit Courts

to entertain jurisdiction where the United States may be a party. There can be no reasonable intendment or presumption, that the jurisdiction thus conferred is not, when exercised, conclusive and final as to the right contested; on the other hand, such must be the effect.

1 Stat. at Large, 441, March 3, 1795, ch. 48 (repealed). This statute provides for the settlement and ascertainment of a certain class of debts due to the government. The officers intrusted to act are to decide, upon principles of equity, upon all claims made, — not merely upon an amount sufficient to absorb the government debits, — and the decision is made final. Upon the same principle, it is submitted that, in cases where recourse to the judiciary is permitted, the decision must be upon all claims which the party has a right to make, in the absence of any provision to the contrary, and the decision should be regarded as final. It would be mere mockery to authorize the judiciary to examine and adjudicate upon a matter, unless such adjudication is to be final.

1 Stat. at Large, 512, March 3, 1797, ch. 20. This act provides for the settlement of accounts between the United States and receivers of public money. It is all accounts, — not so many, and so many only, as shall equal the debits. The fourth section authorizes the court to pass upon all items of credit which have been presented to the Treasury Department, and there disallowed. No other limit.

3 Stat. at Large, 366, March 3, 1817, ch. 45, § 2, provides that all claims and demands whatever, by the United States or against them, and all accounts whatever in which the United States are concerned, either as debtors or as creditors, shall be adjusted and settled in the Treasury Department.

3 Stat. at Large, 592, May 15, 1820 ch. 107, § 4. Certain officers are authorized to determine certain claims, and issue warrants to enforce payment; in which case an appeal is allowed to the judiciary. The eighth section of this act requires the clerks of the District and Circuit Courts, at the close of each term, to return to the proper officer a list of all judgments and decrees during the term, to which the United States are parties, showing the amount which has been so adjudged or decreed for or against the United States. From this provision it is apparent that the jurisdiction of the court is not all on one side, it may pass a judgment or decree against the United States. It may pass upon all claims previously rejected by the department.

3 Stat. at Large, 770, March 1, 1823, ch. 37, § 1. This statute authorizes certain accounts, in relation to which there are no vouchers, to be settled upon equitable principles, by the ac-

counting officers, provided the amount allowed shall not exceed the debits. This is the only statute which confines and limits the amount of credits which may be allowed to the amount of the debits. The reason of the distinction is obvious, — the accounts are to be adjusted upon equitable principles, and without requiring vouchers.

4 Stat. at Large, 414, May 29, 1830, ch. 153, § 6. The Solicitor of the Treasury is required to report to the proper officer all credits allowed by due course of law on any suits under his direction. There does not seem to be any doubt as to the extent of credits which, under this statute, may be allowed by due course of law; all credits disallowed by the accounting officer may be set up by a party sued by the United States, and if proved, allowed, and thereupon be reported as credits thus allowed.

4 Stat. at Large, 563, July 5, 1832, ch. 173. Certain judgments against the State of Virginia to be paid by the United States. In the third section the Secretary of the Treasury is authorized to pay claims where no judgment has been recovered, upon the same principles which the court had adopted in the cases before it; thus reposing confidence in the judgments of the court. As to the correctness of the judgments rendered, the United States, although not parties, make no question or revision.

5 Stat. at Large, 80, July 2, 1836, ch. 270, Post-Office Department. The fifteenth section of this act provides that no claim for a credit shall be allowed upon any trial, except such as shall have been presented to the auditor, and shall have been disallowed. In other words, every claim thus exhibited and disallowed, in the event of a suit against the party, shall be adjudicated by the court. Here is no limit as to the amount which the court may allow.

I have thus shown that the Circuit Court had jurisdiction to adjudicate upon the credits which James Reeside claimed in the litigation between him and the United States.

I now proceed to show that the credits allowed in this way, by due course of law, are to be placed upon the books of the department to the credit of the party making them.

1 Stat. at Large, 433, March 3, 1795, ch. 45, § 3 (obsolete), which provides that credits for loan of money to the government shall be entered upon books of the Treasury Department.

1 Stat. at Large, 441, March 3, 1795, ch. 48, § 2. Provision is made for the adjustment of debts due to and from the United States, and when claims are allowed in the mode prescribed, credit is to be passed therefor upon the public books of account.

3 Stat. at Large, 592, May 15, 1820, ch. 107, § 7. It is the duty of the district attorneys to conform in all suits to the directions of the agent of the Treasury. And immediately at the end of each term of the court within their district, to forward to the agent of the Treasury a statement of the cases, and their disposition, in which the United States are a party. The eighth section requires the clerks to make returns to the agent of the Treasury, with a list of all judgments and decrees, in cases to which the United States may be a party, showing the amount which has been so adjudged or decreed for or against the United States.

4 Stat. at Large, 414, May 29, 1830, ch. 153, § 2. Returns to be made to the solicitor instead of the agent of the Treasury. The fifth section authorizes the solicitor to control all suits in which the United States may be a party. By the sixth section he is required to report to the proper officer all credits, allowed by due course of law, on any suits under his direction.

5 Stat. at Large, 80, July 2, 1836, ch. 270, Post-Office Department, § 16, requires the district attorney to forward to the auditor of the Post-Office Department a statement of all judgments, &c., in suits growing out of that department. These statutes clearly show the jurisdiction of the Circuit Courts, and that all credits allowed shall be entered upon the proper public books to the credit of the party making them.

I submit that the construction of these statutes which I have suggested has been confirmed and uniformly acted upon by the courts. I do not say the position has been presented in express terms, as now presented, but it is a necessary implication from the course of adjudication which has been pursued. Defendants in suits brought by the United States have often relied upon a claim for credits in amount exceeding the debits, and no counsel or court has objected to the consideration of them.

United States *v.* Giles, 9 Cranch, 212. In this case, the limit assumed by counsel for the government was to debits which had been disallowed by the accounting officers.

United States *v.* Wilkins, 6 Wheat. 135. Not merely legal, but equitable claims, are to be allowed to debtors of the United States, by the proper officers. No limit is made to the nature or origin of the claim for a credit, although it was not connected with the claim sought to be recovered by the government. The court refer to the act of March 3, 1797, and say, the object of the act seems to be to liquidate and adjust all accounts between the parties, and to require a judgment for such sum only as is equitably due from the defendant. In this case the mind of the court was not directed to a case in which a

24 *

balance might be due the defendant, which circumstance is not sufficient to change and confine the construction of the statute to such case as was before the court. If so, the great object of the statute, which is a liquidation and adjustment of all accounts between the parties, would be defeated. So, also, it would result, in those cases where suit is brought, if the view presented is not sound, that the power of the court is less than that of the accounting officers, from whose decision the institution of a suit is in effect, although not in form, an appeal.

Walton v. United States, 9 Wheat. 651. In which the court say, if any item of defendant's account has been improperly rejected by accounting officer, it is to be restored to his credit.

Van Ness v. City of Washington and United States, 4 Peters, 232.

Ex parte Watkins, 3 Peters, 193. In which the court say a judgment in its nature concludes the subject on which it is rendered.

Hunter v. United States, 5 Peters, 185. The same rules of contract are applicable where the sovereign is a party, as between individuals. The court make a distinction, where the government is concerned, between the right and the remedy.

United States v. Nourse, 6 Peters, 470. The court below found a balance due the defendant.

United States v. Nourse, 9 Peters, 8. The judgment between the parties in 6 Peters was held conclusive.

United States v. Arredondo, 6 Peters, 711, 715, 719. When the United States consent to be sued, and submit to judicial action, the rights of the parties to be determined upon the same principles as between man and man.

United States v. Dunn, 6 Peters, 51; United States v. McDaniel, 7 Peters, 1; United States v. Ripley, 7 Peters, 18; United States v. Fillebrown, 7 Peters, 28; United States v. Percheman, 7 Peters, 51. No limit of the jurisdiction of the court to items equal in amount with the debits was suggested.

United States v. Jones, 8 Peters, 375. Court say, the defendant may retain the credits allowed, may deny the debits, and claim credits disallowed; thus making no distinction as to the right of the party, depending upon the state of accounts between him and the government.

United States v. Hawkins, 10 Peters, 125. Claims exceeding the debits were passed upon without objection.

United States v. Bank of Metropolis, 15 Peters, 377. " When United States becomes party to a negotiable instrument, it has all the rights and incurs all the responsibilities of individuals who are parties to such instruments. There is no difference, ex-

cept that the United States cannot be sued. But if the United States sue, and the defendant holds its negotiable paper, the amount of it may be claimed as a credit, if after presentation to the accounting officer it has been disallowed, and it should be allowed by a jury as a credit against a debt claimed by United States." Suppose a suit in which the United States present a claim for five thousand dollars, and the defendant exhibits a valid bill of exchange for ten thousand dollars, upon which the government are liable, upon what part of this bill are the court to pass? for how much is he to have credit upon the public books? I submit, that the adjudication of the court must extend to the whole amount of the bill.

Gratiot v. United States, 4 Howard, 80 – 110. In this case defendant claimed a balance, and no objection was made to a consideration of all the items.

Bigelow v. Folger, 2 Metcalf, 256. "When a defendant, in a suit by an administrator of an insolvent estate, files in set-off a claim larger than the one on which he is sued, he is entitled to judgment for the balance. The judgment is to be certified to the judge of probate, and by him added to the list of claims."

Peck v. Jenness, 7 Howard, 612. The court rendered a special judgment, to accomplish its jurisdiction, to protect the rights of the parties.

Voorhees v. Bank of United States, 10 Peters, 449. Every act of a court must be presumed to have been rightly done until the contrary appears. Lytle v. State of Arkansas, 9 Howard, 333; Statutes of 1845 – 46, ch. 90, p. 59.

II. Assuming the Circuit Court of Pennsylvania had jurisdiction to pass upon all items which had been disallowed, and that the credits thus allowed must be passed to the credit of James Reeside upon the public books, as having been put there by due course of law, is the remedy of the plaintiff (assuming for the present she has a remedy) against the Secretary of the Treasury, or against the Postmaster-General, in whose department the claim had its origin?

3 Stat. at Large, 366, March 3, 1817, ch. 45, § 2. "All claims and demands whatever by the United States or against them, and all accounts whatever in which the United States are concerned, either as debtors or creditors, shall be adjusted and settled in the Treasury Department."

This *primâ facie* points out the place of adjustment, and must be so regarded until the contrary is shown. This adjustment and settlement means liquidation, payment. The words must be construed with reference to the subject-matter and purpose to be accomplished; the provision was not mere-

ly to ascertain the amount of indebtment of the government. It may be said that this has no application to contracts originating in the Post-Office Department. Be it so ; a more recent statute settles the matter.

5 Stat. at Large, 80, July 2, 1836, § 6. By this statute, the Treasury is to pay debts of Post-Office Department. 5 Stat. at Large, 732, March 3, 1845, ch. 43, § 22.

III. Assuming the amount due Reeside, as found by the court and jury, must be put to his credit on the books of the Treasury Department, has the plaintiff any remedy ? and if so, is it by mandamus ?

If the views are correct which have been presented, the amount due Reeside must be regarded as a debt of record ; as a debt judicially ascertained, and no longer open to contestation. The Secretary of the Treasury has no discretion as to the amount due, or as to the propriety of putting the credits upon the books. It is then like any other debt which is to be paid. Formerly, many debts were paid by the commissioners of loan ; afterwards, by the United States Bank. Now, all debts are to be paid by the Secretary of the Treasury.

1 Stat. at Large, 65, September 2, 1789, ch. 12 ; 1 Stat. at Large, 512, March 3, 1797, ch. 20 ; 5 Stat. at Large, 80, July 2, 1836, ch. 270, § 10 ; 5 Stat. at Large, 752, March 3, 1845, ch. 71, § 4, which provides that accounts settled at the Treasury Department shall not be opened. The last-cited statute also provides that the accounting officers shall not pass upon claims not presented within six years.

5 Stat. at Large, 112, July 4, 1836, ch. 353, § 10, by which the Secretary of the Treasury is authorized and directed to pay, out of any money in the treasury not otherwise appropriated, any outstanding debts of the United States, and the interest thereon. I submit that an account settled by the court, in cases where the United States bring suit, and the result entered upon the books, must be regarded as closed, and as a debt to be paid.

Stat. of 1846 – 47, 123, February 9, 1847. The Secretary of the Treasury is to pay interest on all the public debt authorized by law. This includes debts of every description, without reference to their origin.

It may be said that the suit was not instituted within six years, and is therefore barred. Such defence was not set up in the court below, and cannot be set up, because the limitation of six years refers undoubtedly to the original claim to be made to the accounting officers. See statute already cited, March 3, 1845, ch. 71, § 4, and Stat. of 1845 – 46, May 7, 1846, ch. 13. Assuming that the party is entitled to remedy, is it by a man-

damus? I submit that such is the proper remedy, and the only remedy. Marbury v. Madison, 1 Cranch, 137; Kendall v. United States, 12 Peters, 524; Ferguson v. Kinnoul, 9 Clark & Finnelly, 251; The King v. Commissioner of Treasury, 5 Nev. & Mann. 589; Kendall v. Stokes, 3 Howard, 87.

The case of Kendall v. United States is a direct, and, as is supposed, conclusive authority. In that case a statute directed a particular claim to be adjusted in a particular mode; that the debt, when so ascertained, should be paid. In the case before the court, the claim of the party has been adjusted and adjudicated in a mode pointed out by general statutes applicable to a class of cases, and such adjustment has resulted in a fixed, certain debt, in relation to which no discretion remains. This debt, like any and all other debts, is directed by general statutes, which require the settlement and adjustment of claims, to be paid. The cases of Decatur v. Paulding, 14 Peters, 497, and Brashear v. Mason, 6 Howard, 92, do not conflict. They may well be distinguished from the case before the court. Rex v. Nottingham Old Water Works Company, 1 Nev. & Perry, 493. Coleridge, Justice, says, two things must conspire to authorize a mandamus: a specific legal right, and the absence of an effectual and efficient remedy for the encroachment of that right.

Whether there is any money in the treasury, or appropriation with which to pay, cannot arise until the objection is taken in the court below.

In the court below, the court dismissed the application without going much into the reasons. Their judgment was put upon two grounds;— that no specific appropriation had been made; that there was no special law directing its payment. When the original contracts were made with the Post-Office Department, appropriations were made to meet them; and, by subsequent legislation, the debts of the Post-Office are to be paid by the Treasury; so, where there is a general law directing the adjustment and payment of debts, there is no occasion for a special act to direct their payment. The Secretary is not charged with discretion in the one case any more than in the other. The court below refer for their reasons to an opinion given by them in McElrath v. McIntosh. The cases are entirely dissimilar. In that case the validity of a power of attorney was to be determined; the claimant under the power of attorney did not stand upon the public books as a creditor of the government. A most appropriate answer to the application in that case might have been given in a single word;— a claim against the sovereign cannot be assigned except with his consent, express, or, as in the case of bills of exchange, to

which he is a party by implication. The opinion of the court below in these two cases may be seen in Law Reporter, Boston, pp. 399 and 448, Vol. I. new series.

By the statute of July 2, 1836, ch. 270, already cited, the funds of the Post-Office Department are transferred to the Treasury; the suits are to be under the guidance of the Treasury, and all future appropriations paid by it. This must be regarded as a transfer of the former appropriations made from year to year, for the services which Reeside performed during their performance.

By the statute of March 3, 1845, ch. 43, § 22 (5 Stat. at Large, 732), it is provided, that, if the postage received under the act, in addition to an annual appropriation of $750,000, is not sufficient to meet the expense of the department, the deficiency shall be paid from any money in the treasury not otherwise appropriated. To confine this provision to the expenses of the department which might accrue after the passage of the act, would not be in accordance with the faith or duty of the government; such limited construction is not required by the language or purpose of the statute.

In conclusion, as the result of the statutes and authorities relied upon, it is submitted, that James Reeside, when sued by the United States, had a right to present for adjudication; that the court had jurisdiction to adjudicate upon every claim which had been previously made to, and disallowed by, the proper department; that the sum allowed to him by the court should have been, and no doubt was, at the time, certified to the proper department; that thereupon it should have been, and now should be, entered to his credit upon the public books of account, as a debt due from the United States to him, in relation to the correctness or fitness of which the accounting officers have no longer any discretion; and although the debt originated in the Post-Office Department, by force of statutes now in existence, it should be paid by the Treasury Department; the duty of the department is merely ministerial.

*Mr. Crittenden* made the following points

1st. That the said Circuit Court for the Eastern District of Pennsylvania had no power or jurisdiction to render judgment against the United States for the said sum of $188,496.06, or for any amount, and that their said judgment is, therefore, null and void. The sovereign power is subject neither to suit nor judgment in its own courts, unless by its own consent, and in this country that consent can only be given by law. Judiciary Act of 1789, § 11 (1 Stat. at Large, 78); 1 Black. Comm. 266

to 269; 3 Story on the Constitution, 154; Briscoe v. Bank of the Commonwealth of Kentucky, 11 Peters, 321; U. States v. Hoar, 2 Mason, C. C. 311. -

2d. That, if said judgment be valid and binding, there can be no reason why the same judicial power that could render it may not enforce it by the ordinary process of execution; and therefore there can be no occasion for the extraordinary writ of mandamus, which can be legally resorted to only where there is no other remedy. Marbury v. Madison, 1 Cranch, 62 et seq.

3d. That if any force or virtue can be ascribed to said judgment, (we think none can,) by analogy to the orders or decrees of English chancellors upon petitory proceedings before them against the crown, it must follow, from the same analogy, that the judgment, like those decrees, is persuasive merely, not compulsory; and therefore most certainly not to be enforced by mandamus. 1 Black. Comm. 241, 242.

4th. The writ of mandamus can be properly issued to a public officer only to compel him to perform a certain act which he is directed by law to do; an act ministerial, and not involving the exercise of any discretion.

There is no law which directs the Secretary of the Treasury to enter on the books of the Treasury a credit to James Reeside for the amount of this judgment, or to pay the same to the petitioner; and she cannot, therefore, be entitled to the mandamus for which she prays. Marbury v. Madison, 1 Cranch, 62; Postmaster-General, &c. v. U. States, on the relation of Stokes, 12 Peters, 524.

5th. It does not appear that Congress have, in any way, recognized this judgment, or their obligation to pay it, or that they have made any appropriation for its payment, and therefore the mandamus prayed for ought not to be issued. Constitution, art. 1, § 9. (1 Stat. at Large, 15).

Mr. Justice WOODBURY delivered the opinion of the court.

This was a writ of error, brought to reverse a judgment in the Circuit Court for the District of Columbia, dismissing a petition for a writ of mandamus.

The mandamus was asked for by the plaintiff, as executrix of James Reeside, to direct the defendant, as Secretary of the United States Treasury, to enter on the books of the Treasury Department to the credit of said James the sum of $ 188,496.06, and pay the same to the plaintiff as his executrix. The grounds for the petition, as set out therein, were, that the United States had sued Reeside in the Circuit Court of the United States for the Eastern District of Pennsylvania, on certain post-office

contracts, and on the 22d of October, 1841, he pleaded a large set-off, and the jury, on the 6th of December ensuing, returned a verdict in his favor on the several issues which had been joined, and certified that the United States were indebted to him in the sum of $ 188,496.06 ; and that on the 12th day of May, 1842, final judgment was rendered in his favor on this verdict, which has never been paid, but still remains in full force.

On an examination of the record, the first objection, to the issue of a mandamus seems to be, that no judgment appears to have been given, such as is set out in the petition, in favor of Reeside for the amount of the verdict.

Certain minutes were put in of the proceedings in that suit, beginning with the writ in 1837, including the verdict, and coming down to May 12, 1842, when it is said, " New trial refused, and judgment on the verdict."

But these seem to be the mere waste docket minutes, from which a judgment or a record of the whole case could afterwards be drawn up. They do not contain a judgment *in extenso*, nor are they a copy of any such judgment. But if, by the laws or practice of Pennsylvania, these minutes may be used instead of a full record, it is difficult to see a good reason for allowing them to control the forms and the principles of the common law applicable to them in the courts and records of the United States; and certainly they could not, unless private rights were involved in having them thus considered, so as to come under the 34th section of the Judiciary Act (1 Stat. at Large, 92). Or unless, as a matter of practice, it was well settled in this way as early as the process law of 1789. (See 1 Stat. at Large, 93.)

But without going into this point further,—means to do it not having been furnished by the petitioner, who relies on it, and was therefore bound to furnish such means,—there is another objection to it paramount to this, and sufficient for barring its use to support the present proceeding. In a case like this, in Pennsylvania, where a set-off is pleaded and a balance found due to the defendant, the judgment entered, if well proved by such minutes, is not, as the petitioner supposes, that the United States was indebted to Reeside in the amount of the verdict and should pay it; but it merely lays the foundation for a *scire facias* to issue, and a hearing be had on that if desired. (Penn. Laws by Dunlap, ch. 20, § 2.) The petitioner and her husband have neglected to pursue the case in that way to a final judgment, and hence have offered no evidence of one, on the verdict of indebtedness to Reeside by the United States. The judgment so far as regards that action would be, when no *scire facias*

was sued out, that the defendant go without day; and so these minutes should be drawn up, when put in a full and due form.

In Ramsey's Appeal, 2 Watts, 230, Ch. J. Gibson explains this fully. "The reference," says he, "was under the act of 1705, by the first section of which the jury are directed, when a set-off has been established for more than the plaintiffs demand, to find a verdict for the defendant, and withal certify to the court how much they find the plaintiffs to be indebted or in arrear to the defendant. The certificate thus made is an appendage to the verdict, but no part of it or of the premises on which the judgment is rendered; for the judgment is not *quod recuperet*, but that the defendant go without day. On the contrary, it is expressly made a distinct and independent cause of action by a *scire facias;* and though a debt of record, it is not necessarily a lien, as was shown in Allen *v.* Reesor, 16 Serg. & Rawle, 10, being made so only by judgment on a *scire facias.*"

The gist of the prayer for a mandamus, therefore, fails. Because, though this application is in form against the person who was Secretary of the Treasury, November 4th, 1848; yet it is to affect the interests and liabilities alleged by the plaintiff herself to exist on the part of the United States.

Furthermore, the judgment sought to be paid is one claimed to have been rendered in form, as well as substance, against the United States.

Now, under these circumstances, though a mandamus may sometimes lie against a ministerial officer to do some ministerial act connected with the liabilities of the government, yet it must be where the government itself is liable, and the officer himself has improperly refused to act.

It must even then be in a case of clear, and not doubtful right. Kendall *v.* United States, 12 Peters, 525; Life & Fire Ins. Co. *v.* Wilson's Heirs, 8 Peters, 291. But here, as no judgment of indebtedness existed against the United States, the whole superstructure built on that must fall.

To save future expense and litigation in this case, with a view to obtain the desired judgment, it seems proper to make a few remarks on the other objections to the mandamus, resting on other and distinct grounds.

A mandamus will not lie against a Secretary of the Treasury, unless the laws require him to do what he is asked in the petition to be made to do. But there is no law, general or special, requiring him either to enter such claims as these on the books of the Treasury Department, or to pay them.

The general statutes, cited by the counsel for the petitioner,

in no case require the Secretary to enter claims like these on his books, or to pay them, when there has been no appropriation made to cover them. This last circumstance seems overlooked by the plaintiff, or sufficient importance is not attached to it, and it will be further considered before closing.

Nor is any special law pretended directing the entry of this claim on the books, or the payment of it either before or after entry. The case of Kendall v. United States, 12 Peters, 524, was one of a special law regulating the subject.

Again, a mandamus, as before intimated, is only to compel the performance of some ministerial, as well as legal duty. Kendall v. United States, 12 Peters, 524; Rex v. Water-works Company, 1 Nev. & Perry, 493.

When the duty is not strictly ministerial, but involves discretion and judgment, like the general doings of a head of a department, as was the respondent here, and as was the case here, no mandamus lies. Decatur v. Paulding, 14 Peters, 497; Brashear v. Mason, 6 Howard, 92.

It is well settled, too, that no action of any kind can be sustained against the government itself, for any supposed debt, unless by its own consent, under some special statute allowing it, which is not pretended to exist here. Briscoe v. Kentucky Bank, 11 Peters, 321; 4 Howard, 288; 9 Howard, 389.

The sovereignty of the government not only protects it against suits directly, but against judgments even for cost, when it fails in prosecutions (4 Howard, 288).

Such being the settled principle in our system of jurisprudence, it would be derogatory to the courts to allow the principle to be evaded or circumvented.

They could not, therefore, permit the claim to be enforced circuitously by mandamus against the Secretary of the Treasury, when it could not be directly against the United States; and when no judgment on and for it had been obtained against the United States.

As little also would be the propriety of allowing by scire facias, or otherwise, a judgment to be entered against the United States on a set-off, when it could not have been allowed in an action against them on the subject-matter of the set-off.

To permit a demand in set-off against the government to be proceeded on to judgment against it, would be equivalent to the permission of a suit to be prosecuted against it. And however this may be tolerated between individuals, by a species of reconvention, when demands in set-off are sought to be recovered, it could not be as against the government except by a mere evasion, and must be as useless in the end as it would be .

derogatory to judicial fairness.   A set-off or reconvention is often to be treated as a new suit by the defendant, and the pleadings and judgment are to be made to correspond. (See Louisiana Code of Practice, 374, §§ 371 – 377.) In.Perry v. Gerbeau and Wife, 5 Martin, N. S. 18, the court say, " The claim set up in the answer was one in reconvention, and too general. Such demands should have the same certainty as a petition.".

It would present, also, the inconsistency of the officers of a government issuing precepts against it, and seizing and selling the property under their own charge and protection.

Or it would present the other alternative, of entering a judgment against a party which it could not enforce by execution, and which none of its officers had been authorized to discharge.

This last consideration is one of peculiar importance in this proceeding, and in the proper measures to be adopted under our political and fiscal system, as to a claim like this.

No officer, however high, not even the President, much less a Secretary of the Treasury or Treasurer, is empowered to pay debts of the United States generally, when presented to them. If, therefore, the petition in this case was allowed so far as to order the verdict against the United States to be entered on the books of the Treasury Department, the plaintiff would be as far from having a claim on the Secretary or Treasurer to pay it as now. The difficulty in the way is the want of any appropriation by Congress to pay this claim. It is a well-known constitutional provision, that no money can be taken or drawn from the Treasury except under an appropriation by Congress. See Constitution, art. 1, § 9 (1 Stat. at Large, 15).

However much money may be in the Treasury at any one time, not a dollar of it can be used in the payment of any thing not thus previously sanctioned. Any other course would give to the fiscal officers a most dangerous discretion.

Hence, the petitioner should have presented her claim on the United States to Congress, and prayed for an appropriation to pay it. If Congress after that make such an appropriation, the Treasury can, and doubtless will, discharge the claim without any mandamus. But without such an appropriation it cannot and should not be paid by the Treasury, whether the claim is by a verdict or judgment, or without either, and no mandamus or other remedy lies against any officer of the Treasury Department, in a case situated like this, where no appropriation to pay it has been made. The existence of this other and ordinary mode of redress, by resort to Congress, may be another reason against a mandamus, as that lies only

when no other adequate remedy exists. Marbury *v.* Madison, 1 Cranch, 62 – 137; Kendall *v.* United States, 12 Peters, 525.

But, independent of this last consideration, which as a remedy may not come within the usual meaning of another remedy, the grounds for the petition are not sufficient, and the judgment below, dismissing it, must be affirmed.

### *Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs.