Mr. Justice Merrick
delivered the opinion of the court.
This is an application on behalf of the State of Mississippi to compel the First Comptroller to take the necessary steps towards issuing a warrant for payment to the State of $5,308.50, which, sum is admitted to be due and payable from the Treasury under the acts of March, 1817 (3 Stat,, 349, and of September, 1841, 5 Stat., 457, unless the general Government be entitled to set off against that demand $413,084.66, being the part of the direct tax of twenty millions which was apportioned to the State of Mississippi by the 8th section of the act of 1861, lib. 45, 12 Stat., 294, as the part of said tax apportionable to the people of that *236 State by virtue of tbe terms of tbe Constitution which determines the quantum of any direct tax which is to be borne by the people within each State respectively. The comptroller admits in his return to the rule to show cause, and still more emphatically in his official opinion upon the claim, filed on the 4th of June, 1885, a copy of which he has submitted here as his argument on the present application. He declares that, according to his opinion, the State is in no manner indebted to the United States in any amount for direct taxes or otherwise, but he maintains in that opinion and by his return to the rule to show cause, that he is, nevertheless, bound to shut his eyes to his clear convictions, that the act of 1861 could not, constitutionally, and did not create and was never designed to create a debt against the States themselves by the imposition of the tax; because a certain auditor, on the 15th of May, 1868, made a certificate that he had examined and adjusted an account and found the precise sum mentioned in the 8th section of the act of 1861 ($413,084.66) to be due by virtue of said act, and thereupon the then comptroller, on the 29th of May, 1868, certified to the same as due and payable in said certificate of May 15. The comptroller submits for the decision of this tribunal whether he is not bound, in the consideration of the present claim for moneys falling due in 1884, under the said acts of 1817 and 1841, to regard the certificates of the auditor and comptroller of 1868 as a definite adjudication operating in every case and through all time upon the officers of the Treasury; that the State of Mississippi is a debtor to the United States for the aforesaid quota of the direct tax. If submission to its jurisdiction could authorize a judicial tribunal to decide all questions which are mooted between the powers, there would be very little difficulty in dealing with the inquiry whether, in a subsequent case, an accounting officer, of the Treasury is bound and estopped by a previous construction of a statute by another accounting officer, and which he is convinced is erroneous, because that construction has assumed the forrh of an account stated, and although it be apparent that such *237 statement of account is based upon no evidence or any fact outside tbe terms of the statute itself.
When there is no jurisdiction, it does not helong to the proper functions of a court to give an opinion upon a matter submitted for the guidance of parties or tribunals even where the parties consent and invite such an opinion. The whole business of the court is confined to giving decisions to cases properly before it (Wills on Jurisdiction, sec. 13); hence I am not acquitted of the duty of first inquiring whether there be any jurisdiction upon the case made by the petitioner and return, to grant a mandamus against the comptroller, the result of which would be to compel the payment of a pure money demand against the Treasury of the United States, which the United States, through that officer, refuses to pay. This inquiry does not involve a discussion of what are ministerial as distinguished from discretionary acts of executive officers — not that other question which was adjudicated by this court in 3 Mackey, 229 (U. S., ex rel. Hoe, vs. Butterworth) whether if any executive officer admits that he ought to perform a duty to a citizen which has been confided by law to his official discretion, in a matter in which the Government is not in any sense an adverse party, and he declares in his return that, in his judgment, he ought to perform the duty. That in deference to the ruling of another officer, he declines to discharge that duty, the court will enforce the execution of that duty by a mandamus. But the question here is simply whether if a claim he presented to the Treasury and rejected for reasons which, to the judicial mind, might seem utterly untenable, it is competent for a court to enforce its payment by mandamus. Section 236 of the Revised Statutes provides that “all claims and demands whatever by the United States or against them, and all accounts whatever in which the United States are concerned, either as debtors or creditors, shall be settled and adjusted in the Department of the Treasury. The organization of the department is so comprehensive, so thorough, so exact, it is supplied not only with skilled accountants, but special law officers, and besides has, on proper oc *238 casion, the right to call in aid the opinion of the Attorney-General of the United States, that it seems fully equipped for the discharge of every fiscal duty and exigency. And, therefore, independently of general considerations of abstract policy, the Government would seem to be justified in maintaining in all its integrity the dogma that it cannot, b.y any form of process, base its rights of property, subjected to the arbitrament of a judicial tribunal, without its' explicit consent in due form of law.
■ The Supreme Court of the United States has, in three several cases, been so emphatic and precise in its utterance on this point, that nothing else is appropriate to this opinion but some citation from those cases.
In The United States vs. Guthrie, 14 How., 303, the court says:
“ The only legitimate inquiry for our determination upon the case before us is this, whether, under the organization of the Federal Government or by any known principle of law, there can be asserted a power in the circuit court of the United States for the District of Columbia, or' in this court, to command the withdrawal of a sum or sums of money from the Treasury of the United States^to be applied in satisfaction of disputed'or controverted claims against the United States. This is the question. The very question presented for our determination, and its simple statement, would seem to carry with it the most startling consideration, nay, its unavoidable negative, unless this should be prevented by some positive and controlling command; for it would occur a priori to every mind that a Treasury not fenced round and shielded by fixed and established modes and rules of administration, but which could be subjected to any number or description of demand, assorted and sustained through the undefined and undefinable discretion' of courts, would constitute a feeble and inadequate provision for the great and inevitable necessities of the nation. The Government, under such a regime, or rather such an absence of all rule, would, if practicable at all, be administered, not by the great departments ordained by the Con *239 stitution and laws and guided by the modes therein prescribed, but by the uncertain and perhaps contradictory action of the court in the enforcement of their views of private interest.”
Again, in Russell vs. Walker, 11 How., 290, that court says:
“It is well settled, too, that no action of any kind can be sustained against the Government itself for any supposed debt unless by its consent under some special statute allowing it, which is not pretended to exist here. * * * The sovereignty of the Government not only protects it against suits directly, but against judgments even for costs when it fails in prosecutions. Such being the settled principle of our system of jurisprudence, it would be derogatory to the courts to allow the principle to be evaded or circumvented. They could not, therefore, permit the claim to be enforced circuitously by mandamus against the Secretary of the Treasury, when it could not be directly against the United States, and when no judgment oh or for it had been obtained against the United States.”
In -that most familiar case of Kendall vs. U. S., ex rel. Stokes, 12 Peters, Judge Thompson, speaking for the court, says:
“These claims now were of course upon the United States, through the Postmaster-General. The real parties to the dispute were, therefore, the relators, and the United States could not, of course, be sued or the claims be in any way enforced against the United States, without their consent obtained through an act of Congress, by which they consented to submit these claims to the solicitor of the Treasury to inquire into and determine the equity of the claims, and to make súch allowance therefor as, upon a full examination of all the evidence, should seem right according to the principles of equity. And the act directs the Postmaster-General to credit the relators with whatever sum, if any, the solicitor shall decide to be due to them for or on account of any such service or contract. * * * Under this law the Postmaster-General is vested with no discretion or con *240 trol over the decision of the solicitor, nor is any appeal or review of that decision provided for by the act. The terms of the submission was a matter resting entirely in the discretion of Congress, and if they thought proper to vest such power in any one, and especially as the arbitrator was an officer of the Government, it did not rest with the Postmaster-General to control Congress or the solicitor in that office. The right to the full amount of the credit, according to the report of the solicitor, having been ascertained and paid by law (a special act of Congress), the enforcement of that right fails within judicial cognizance * * * The act required to be done by the Postmaster-General is simply to credit the relators with the full' amount of the award of the solicitor. This is a precise, definite and ministerial act about which the Postmaster-General had no discretion whatever; the law upon its face shows the existence of accounts between the relators and the Post-Office Department. No money was required to be paid and none could have been drawn out of the Treasury without farther legislative provision, if this credit. should overbalance the debit against the relators. But this was a matter with which the- Postmaster-General had no concern. He was not called upon to furnish the means of paying the balance 'if any should be found. He was required simply to give the credit.”
There is no deliberate expression in any subsequent opinion of the Supreme Court which enlarges these extreme and narrow and rigid limitations of the power of courts to issue a mandamus, the effect of which would be to compel the payment of money from the Treasury. In the case of Rusiele it will be observed that the court says that the mandamus is, in effect, a suit against the United States. That a court must not permit the United States to be sued by a mandamus directed to one of its officers where it could not be sued directly unless by its own consent under some special statute allowing it. Now it does not require argument to manifest that a refusal by an officer of the Treasury Department whose general duty finder the law is to allow and *241 take steps to issue a warrant for the payment of any claim, is a refusal of the claim by the United States for the time being ; that a mandamus'against him to compel the allowance and payment, thereof, is a suit against the United States, and that it is none the less a suit against the United States because the ground or notices of refusal to allow may be obviously and notoriously without legal justification. In other words, that no error of judgment or capriciousness of conduct can destroy, for the time being the quality of agent and actor in the name and on behalf of the Government of the proper Treasury official in disallowing the claim of any State or individual for money due or alleged to be owing by the United States.
For these reasona, finding this court without jurisdiction to entertain the petition, and without authority to pass upon the validity of the objection which the comptroller interposes against the issue of a warrant in favor of the relator, it only remains to refuse the writ of mandamus as prayed, which is accordingly done.'