# Meeting the Uniformed Military Services' Payroll During a Period of Lapsed Appropriations

The Secretary of Defense may meet the August 31, 1982, payroll for the uniformed military services without violating the Antideficiency Act, even though there are insufficient appropriated funds remaining in the payroll account to cover the amounts of social security and federal income tax that will be withheld simultaneously with issuance of the paychecks. This is because the due date for such withheld sums to be paid into the Treasury has been adjusted by the Secretary of the Treasury to September 30, 1982, and there is no legal obligation on the part of any employer to have in hand or to transfer to the Treasury any withheld funds until those payments are actually due.

Funds withheld from an employee's pay are not considered legally transferred to the employee at the time a paycheck is issued, therefore, the prohibition in Article I, § 9, Clause 7, against drawing money from the Treasury in advance of an appropriation is not implicated by the timely issuance of paychecks in this case.

August 25, 1982

THE SECRETARY OF DEFENSE

MY DEAR MR. SECRETARY: By letter of August 23, 1982, to Director Stockman of the Office of Management and Budget, you have stated that you will take steps to meet the August 31, 1982, payroll for the uniformed military services if the Attorney General reaches certain conclusions regarding the legality of meeting the payroll. The purpose of this letter is to advise you that I have examined this matter and have concluded that there are no legal barriers to meeting the payroll in the manner contemplated.

The issues presented arise only if the President vetoes the enrolled bill, presently before him for his approval or disapproval, which makes government-wide supplemental appropriations for fiscal year 1982. If the President vetoes that bill and no comparable legislation is enacted before August 31, 1982, I am informed that unexpended balances in the 10 regular military pay appropriation accounts will be sufficient for military personnel to be paid from those accounts their full take-home pay. Although the payroll, as regards take-home pay, will thereby be met from appropriated funds, certain questions arise because there will be insufficient appropriated funds remaining in the appropriation accounts at issue which could be paid to the Treasury on August 31, 1982, to cover the amounts of FICA and federal income tax, totaling, I am advised, approximately $652,000,000, that will be withheld simultaneously with issuance of the paychecks.

27

Under existing regulations issued by the Secretary of the Treasury, 26 C.F.R. §§ 31.6302(c)-1 *et seq.* (1981), there is a legal requirement that the $652,000,000 so withheld be transferred to the appropriate accounts at the Treasury by August 31, 1982. The Secretary of the Treasury has, however, determined to adjust that "due date" to September 30, 1982. Once this change is accomplished by a regulation issued by the Secretary, a draft of which has been provided to me, the $652,000,000 will not have to be paid over to the appropriate accounts at Treasury until September 30. In addition, the Chief Counsel of the Internal Revenue Service has informed this Department by letter of August 24, 1982, that there is no requirement imposed under federal statutes or regulations for an employer, otherwise subject to all of the statutory responsibilities imposed by the various provisions of the United States Code governing FICA and federal income tax withholding, to have in hand, or otherwise in escrow at the time paychecks are issued, the amount of funds necessary to cover the employer's responsibilities under those statutes.[1] In other words, there is no legal obligation to have in hand or to transfer to the Treasury any funds which have been, as an accounting matter, "withheld" from an employee's paycheck until such time as, under pertinent Treasury regulations, those payments are actually due at the Treasury.

If there were a legal requirement for you, as Secretary of Defense, to transfer to the appropriate accounts at Treasury any funds obligated for payment of the taxes involved on August 31, then it would be doubtful that the military personnel involved could receive their full take-home pay because of the superior obligation of the Department of Defense, as an employer under the relevant tax laws, *see, e.g.,* Comp. Gen. B-161457 (May 9, 1978), to make timely payment into those tax accounts. However, because the Secretary of the Treasury will adjust that date to September 30, no payment will be due on August 31, 1982. Thus, your Department will be in the position of a private employer, without any obligation under the law to set aside or otherwise escrow funds to cover the legal obligation that has in fact been accruing throughout the particular pay period involved. In short, you have the authority to determine to pay full take-home pay to the uniformed military services even in the absence of appropriated funds sufficient to cover the taxes on that pay.

You have also raised the question whether a transfer of funds has occurred as a matter of law at the time a paycheck is issued irrespective of whether the tax liability involved is due and payable to the Treasury, so as to implicate the prohibition in Article I, § 9, Clause 7 of the Constitution that no funds be "drawn from the Treasury" in the absence of an appropriation. By way of example, your Department has propounded the following hypothetical: a military officer receives gross pay in a specific pay period of $1,000, $200 of which is required by law to be withheld from that gross pay for FICA and income taxes. Because that officer "earned" that $200, is there not in law a transfer to him of that $200, with the Secretary of Defense merely acting as his "agent" for purposes of paying over that money into the Treasury at the appropriate time?

---

[1] "The United States as an employer is liable for the payment of salaries and employment taxes in the same manner as the private sector employer." Comp Gen B-161457 at 2 (May 9, 1978).

28

I believe that if the legal obligation to pay into the Treasury that $200 were the employee's, concern over this question might have some merit. However, as is made clear by 26 C.F.R. § 1.31-1(a), an employee in that situation cannot be held liable for the failure of his employer to make the requisite payment. *See generally Slodov* v. *United States,* 436 U.S. 238, 243 & n.4 (1978). Based on that regulation, I conclude that no legal transfer has occurred, because the obligation to make legally required payments to the Treasury never passes to the employee and because the legal obligation on the Department of Defense to make the transfer will not mature until September 30. I believe that this analysis and conclusion effectively dispose of any suggestion that an obligation of funds to be paid over into the FICA and federal income tax withholding accounts at Treasury is equivalent to funds having been "drawn from the Treasury" under Article I, § 9, Clause 7 of the Constitution. *See Reeside* v. *Walker,* 52 U.S. (11 How.) 272 (1851).

The *Reeside* case is particularly instructive on this constitutional issue. In that case, the petitioner had secured a money judgment against the United States as the result of prevailing on a set-off claimed against the United States. The petitioner had subsequently brought a mandamus action asking that the Secretary of the Treasury be ordered to enter on the books of the Treasury a credit to him and that the credit be paid to him. In denying the petitioner's right to that relief, the Court had occasion to distinguish between the entry of a credit to a private person on the books of the Treasury and the disbursement of that credit under Article I, § 9, Clause 7.

As to the former, the Court stated that if "the verdict against the United States [were] to be entered on the books of the Treasury Department, the plaintiff would be as far from having a claim on the Secretary or Treasurer to pay it as now." This was so, declared the Court, because of "the want of any appropriation by Congress to pay this claim. It is a well-known constitutional provision, that no money can be taken or drawn from the Treasury except under an appropriation by Congress." 52 U.S. (11 How.) at 291. I believe the *Reeside* case establishes the distinction between accounting entries that may acknowledge liability, on the one hand, and the paying out from an account in the Treasury of funds in the absence of appropriations, an act clearly prohibited by Article I, § 9, Clause 7. *See also* 23 Op. Att'y Gen. 586 (1901). Your obligation to make the payments in issue clearly exists, but no transfer of funds to the employee is recognized in the law and none has occurred in fact.

For the same reason, I see no basis to argue that "an expenditure . . . under any appropriation or fund in excess of the amount available therein" has been made under the Antideficiency Act, 31 U.S. § 665(a) (1976). Clearly an obligation has been incurred, but no funds have even been identified, much less transferred, from any account to any other account, to make good that obligation,[2] nor is there

---

[2] I note that on August 24, 1982, you certified by letter to the Director, Office of Management and Budget, that maintaining all uniformed military personnel on the payroll during this period in which insufficient appropriations will exist to pay their salaries and taxes thereon is consistent with the opinion of the Attorney General of January 16, 1981, regarding the applicability of the Antideficiency Act, 31 U S C § 665(a), to the employment of personal services in excess of that authorized by law during this period.

29

any legal requirement that any such transfer occur until September 30, 1982.

In conclusion, I believe that the action to be taken by the Secretary of the Treasury to adjust the date on which these funds must be paid over to the appropriate accounts at Treasury from August 31 to September 30, 1982, the absence of any legal compulsion for the Department of Defense as an employer to escrow or set aside funds which will not be due until September 30, and the fact that no employee of the Department of Defense paid pursuant to this transaction can legally become obligated to the United States for payment of the funds withheld all combine to render legal the issuance to those employees of full take-home paychecks on August 31, 1982.

Sincerely,
EDWARD C. SCHMULTS
*Acting Attorney General*