<hr />

## No. 120.

### STATE OF LOUISIANA *ex rel.* C. C. HARTWELL *v.* ALLEN JUMEL, Auditor.

1. Where the law has vested a discretion in any executive officer of the State, the courts will not control him in its exercise.
2. Where, however, the discretion has been lawfully exercised by the legislative department, and there remains to such executive officer only the obligation of complying with its mandates, the courts will, if necessary, compel his obedience.
3. In the former case, interference by the courts would be an usurpation by one agent of the people of the functions specially confided to another.
4. In the latter, the courts interfere simply to prevent a subordinate from usurping the functions of superior authority, and substituting his discretion for that of the legislature, to whom the people had confided it.

5. The Revised Statutes of Louisiana, sections 176, 179, 181, 183, 186, *et seq.*, are, as to the class of claims coming within the purview of Art. 1, Miscellaneous Ordinances, Constitution of Louisiana of 1879, abrogated by the latter.

6. That constitutional provision preserves only such claims as are evidenced by Auditor's warrants, and restricts the application of the uncollected revenues for the years named to the satisfaction of such demands.

7. By its terms, even such Auditor's warrants are of no effect until examined and approved by the Auditor, Treasurer and Attorney General.

8. Even Auditor's warrants so approved, cannot be satisfied out of the treasury as such, but must be either paid in for back taxes of the years indicated or funded into Baby·Bonds.

9. By the Constitution of 1868, the debts of each year were restricted for their payment to the revenues thereof. The State, therefore, was bound only to apply faithfully such revenues to such claims so far as they went.

10. The constitutional provision in question, was a scheme by the State for the fair distribution of the uncollected revenues of former years, amongst the legitimate creditors of the State, for corresponding periods.

11. Where the State, as the principal, commands the Auditor, as its agent, to make a particular distribution of the funds in its public treasury, any proceeding intended to compel him to violate such instructions is an action against the State, which, by reason of its sovereignty, will not lie.

*Appeal from Division E, Civil District Court.    Lazarus, Judge.*

*Braughn, Buck & Dinkelspeil* for relator.

*J. C. Egan,* Attorney General, for respondent.

McGLOIN, J.—Plaintiff seeks, by mandamus, to compel the Auditor to warrant upon the Treasurer of the State for payment of two vouchers issued to him by the committee on contingent expenses of the House of Representatives during the session of 1875.  He alleges that by Act 17 of 1875, an appropriation was duly made to pay claims such as those he holds.

The defense is, that the matters sought to be affected by the mandamus prayed for are not within the scope of judicial control; and that the Constitution of 1879, by article 1 of its

Miscellaneous Ordinances, has appropriated all funds in the State treasury to be derived from payments of taxes and licenses due prior to January 1st, 1879, to pay the interest upon the five-dollar bonds provided for in said article, and to create a sinking fund to redeem the same.

The learned judge *a quo*, in an elaborate and learned opinion, reviewing the various authorities bearing upon the important issues involved in this controversy, maintained the defense, and denied the writ. The ruling is founded upon two propositions of law, both of which may be considered as now firmly established in American jurisprudence.

1st. Courts of justice have neither the right nor the power to control executive officers of the State in the performance of such duties as are by law confided to their discretion.

2d. That a proceeding, such as that now before the Court, is in reality a proceeding against the State, which, as a sovereign, is beyond judicial control.

I.

With regard to the first of these principles, the distinction is drawn between duties discretionary and those merely ministerial. As to the first, the courts are powerless to interfere ; but where the latter alone are concerned, they will issue their process. Kendall *v.* U. S., 12 Peters, 612.

The wisdom and necessity of this distinction are patent. The fundamental idea of the American theory of government is, that the three departments, legislative, executive, and judicial, collectively or separately, do not constitute the sovereignty itself. The people themselves, in the aggregate, are sovereign, and the various departments are merely agents, exercising as such whatever portion of the governmental power that may be assigned to them. This they hold, under the Constitution, as by a written procuration ; and beyond what its letter, or evident intent confers, they are without power. When, therefore, a particular duty is imposed upon one department, that duty is absolutely excluded from the province of the others.

The management and control of the finances of the State has by the Constitution been confided to the executive, under the control, with certain limitations, of the Legislature; and it is, therefore, excluded from amongst the things which are within the judicial province. So, where, by the fundamental law, or by statutory action, the management of any branch of the State's finances, or of other matters of an executive character, is left to the judgment and discretion of a particular officer, as to such matters, he is the exclusive agent of the people; and it would be usurpation for any other special agent of the same sovereign principal to assume authority in that connection.

Where, however, the Constitution has itself expressly regulated particular matters, or has confided to the Legislature the right so to do, and there has been definite legislation disposing of the same and directing a particular officer to execute its mandate, such officer is not the agent of the people for the purpose of passing in judgment upon and determining the matter, and he has no discretion whatever, but must obey.

In such cases the courts intervene to compel obedience, and they are not substituting their own judgment for that of others to whom the people have confided the right of determination. On the contrary, as interpreters and enforcers of the law, they are rendering effective the determination of the real mandatory, and preventing subordinate officers from substituting their individual discretion for that of the Legislature, or Convention, as the case may be, where solely the discretion should lie. Louisiana College v. State Treasurer, 2 La. 395; State ex rel. Mahan v. Dubuclet, 22 La. An. 602; State ex rel. DeMonasterio v. Shaw, 23 La. An. 790; State ex rel. Sam Smith & Co. v. Board of Liquidators, 23 La. An. 388; State ex rel. Barnett v. Warmoth, 23 La. An. 76; Mossy v. Harris, 25 La. An. 624; State ex rel. Macauley v. Clinton, 27 La. An. 430; State ex rel. Longstreet v. Johnson, 28 La. An. 932; State ex rel. Miss. Valley Nav. Co. v. Warmoth, 24 La. An. 352; Oliver v. Governor, 22 La. An. 1; State ex rel. Hilman v. Dubuclet, 24 La. An. 16; State ex rel. Gourdon v. Dubuclet, 28 La. An.

85 ; Marbury *v.* Madison, 1 Cranch 137 ; 19 Johnson, 259 ; 4 Wall. 500 ; Kendal *v.* U. S. 12 Pet. 612 ; Decatur *v.* Paulding, 14 Pet. 497 ; Brashear *v.* Mason, 6 How. 93 ; Reeside *v.* Walker, 11 How. 290 ; Liquidators *v.* McComb, 2 Otto, 540.

These principles were applied by the learned judge *a quo* in connection with sections 176, 179, 181, 183, 186, *et seq.*, Revised Statutes of 1870, requiring the Auditor to examine and determine upon the validity of all claims against the State, and to warrant only for those which were valid, granting to the holders of claims rejected by him an appeal to the Legislature. It seems, however, to us, that the effect of article 1, Miscellaneous Ordinances of the Constitution of 1879, practically eliminates this question from the case. That constitutional provision was adopted as a scheme for the redemption of the floating debt of the State due prior to January, 1879. It did not, however, embrace all claims against the State, but only those which were contracted since January 1st, 1875, with what might remain due for salaries of constitutional officers for the year 1875. The holders of obligations, such as were covered by it, could apply the same to the payment of taxes and licenses due prior to January 1st, 1879, or, at their option, fund them in bonds of the denomination of five dollars. All funds in the treasury collected, or to be collected for any taxes or licenses due prior to January 1st, 1879, were set aside as a special fund to pay interest and principal of such bonds.

A careful study of this constitutional legislation will show that the Auditor has, in this connection, no longer the discretion accorded him by the Revised Statutes, as referred to, but that there are three separate reasons why the prayer of relator should be refused.

1st. The article of the Miscellaneous Ordinances of the Constitution of 1879, restricts its provisions to such claims alone as are evidenced by *Auditor's warrants.* The relator holds no such warrants, but his claims are exhibited to us simply in the shape of certificates of indebtedness, signed by the chairman of the committee on contingent expenses of the House of Rep-

resentatives, approved by the Speaker, during the session of 1875.

2d. By the constitutional provisions already referred to, the Auditor, Treasurer and Attorney General, are required to examine and approve all claims, even when already evidenced by Auditor's warrants, before they can be used for payment of back taxes, or funding, as described. The Auditor, therefore, separately, has no authority to pass upon the validity of these claims; nor can he or any other State officer be compelled or permitted to treat them as valid until they have been subjected to the examination and received the approval of the three designated officers of the State.

3d. Even were they Auditor's warrants duly approved by the officers named, the plaintiff's claims could not be paid as such. The outstanding warrants covered by the constitutional provision, when approved, can only be received for back taxes or exchanged for bonds, which are to run until January 1st, 1886.

It is very evident, therefore, that the demand of the relator cannot prevail, unless these clear and emphatic provisions of the Constitution of the State be disregarded. In determining whether we have the right so to do, two questions naturally suggest themselves. The first is whether the State has the right, intrinsically, to adopt the course it has pursued, and next, whether, even if it has done wrong to the plaintiff, he has any legal remedy.

I.

According to Constitution of 1868, as amended in 1874, which Constitution was the fundamental law of this State in 1875, and entered into relator's contract, if a contract, strictly speaking, he had, his sole recourse was upon the revenues of the year during which his debt arose or was created. If this special fund was inadequate, he had no further claim upon the State. When, therefore, in 1879, the State found it necessary to provide for the just distribution of the unpaid revenues of prior years to the outstanding floating debt of the State, it had the

right to adopt such rules as it considered for that purpose most equitable and effective. If in its opinion all claimants could not be paid, it was fair and reasonable to make the discrimination against State claims which, although in existence for years, did not have the Auditor's approval as directed by the Revised Statutes, and against which there was consequently a strong presumption, and in favor of such as had upon them this stamp of legitimacy. See State *ex rel.* Collens *v.* Burke, 32 La. An. 1218.

## II.

Although the relator has made the Auditor respondent in this proceeding, it is very evident that the State is really the party in interest. It is its funds that are sought to be reached. It is a claim against it that is sought to be enforced. Individually, the Auditor has not the slightest interest in the controversy. The intervention of the Court is asked not to compel him to comply with what his principal, the State, has ordered him to do, in which event the interference of the Court would be for the Commonwealth and against him. On the contrary, it is sought to compel him to disobey the express mandates of his principal, and, therefore, it is against the rights and interests of the latter that the process of the Court is asked to be levelled. State *ex rel.* Macauley *v.* Clinton, 27 La. An. 430; Case *v.* Terrell, 11 Wall. 203. To entertain such litigations would be effectually accomplishing by indirect means what it is universally conceded could not be reached directly. U. S. *v.* McLemore, 4 How. 288. This would be a shameful circumvention of the letter and spirit of the law, to which courts of justice should never lend themselves. Reoside *v.* Walker, 11 How. 290; 2 Wood's C. C. 21; State *ex rel.* Hart *v.* E. A. Burke, Treasurer, lately decided by the Supreme Court of Louisiana.

Judgment affirmed.

---

ROGERS, J. I am not now prepared to determine the questions as to the effect of the constitutional provision in so far as it excludes the claim of the relator. While assenting to the

general propositions of law, and the deductions made therefrom by my colleague, I am of opinion that the conclusion is sufficiently supported by the authority of State *ex rel.* Collens *v.* Burke, Treasurer, 32 La. An. p. 1218. I have specially investigated, therefore, none of the other questions involved in the case.