# HANNIBAL AND ST. JOSEPH RAILROAD COMPANY *v.* MISSOURI RIVER PACKET COMPANY.

## ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 163. Argued and Submitted February 6, 1888. — Decided March 19, 1888.

The act of Congress of July 25, 1866, 14 Stat. 244, § 10 of which authorized a bridge to be constructed across the Missouri River at the city of Kansas, required that the distance of one hundred and sixty feet between the piers of the bridge, which was called for by the act, should be obtained by measuring along a line between said piers drawn perpendicularly to the faces of the piers and the current of the river; and as such a line drawn between the piers of the bridge of the plaintiff in error measures only one hundred and fifty-three feet and a fraction of a foot, instead of the required one hundred and sixty feet, it is not a lawful structure within the meaning of that act.

When there is any doubt as to the proper construction of a statute granting a privilege, that construction should be adopted which is most advantageous to the interests of the government, the grantor.

A decision by the highest court of a State upon the question whether the mere fact that a bridge, constructed under authority derived from the act of Congress of July 25, 1866, 14 Stat. 244, had not been constructed as required by the statute rendered the owner liable for injuries happening by reason of its existence to a steamboat navigating the river, irrespective of the question whether the accident was the result of the improper construction, presents no federal question for the decision of this court.

THIS was an action brought in a state court of Missouri to recover damages for injuries to steamboats of the plaintiff below, caused by striking upon the piers of a bridge across the Missouri River, constructed by the defendant. Verdict and judgment for plaintiff, which was affirmed by the Supreme Court of the State. Defendant sued out this writ of error. The case is stated in the opinion of the court.

*Mr. Wirt Dexter* and *Mr. John J. Herrick* for plaintiff in error, submitted on their brief.

*Mr. Sanford B. Ladd* for defendant in error. *Mr. John C. Gage* was with him on the brief.

MR. JUSTICE LAMAR delivered the opinion of the court.

This is a writ of error to the Supreme Court of the State of Missouri to review a judgment of that court affirming a judgment of the Circuit Court of Jackson County in said State against the plaintiff in error. The action was brought in February, 1875, in the Circuit Court of Jackson County, by the Missouri River Packet Company, plaintiff below, against the Hannibal and St. Joseph Railroad Company, defendant below, to recover damages for injuries done to two of the plaintiff's steamboats by a railroad bridge, which had been erected and maintained by defendant over the Missouri River at Kansas City, Missouri, the piers of which and two certain structures connected therewith, it is alleged, unlawfully obstructed the navigation of said river.

. The petition contained two counts, the first of which was as follows :

"Plaintiff states that it is, and for the five years last past has been, a corporation organized and created under and by virtue of the laws of the State of Missouri, and during said period has been and still is the owner and proprietor of numerous steamboats, including the steamboat named Alice, hereinafter mentioned, with which it has, as such corporation, during said period been engaged in navigating the waters of the Missouri River, and conveying and transporting, by means thereof, passengers and freight between the various towns and cities situated on the banks of said river in the States of Missouri and Kansas.

"That the defendant is and for the last twenty years has been a railroad corporation, organized under and by virtue of the laws of the State of Missouri.

"That the Missouri River, for a long distance above the city of Kansas, in the county of Jackson and State of Missouri, and below said city to the mouth of said river, is a navigable stream ; that prior to the 4th day of March, 1874, the defendant had erected, and prior thereto and on said day did keep and maintain, in the said river and the channel thereof, near the southern bank thereof and near the foot of the street

known as Broadway, in said city of Kansas, a certain structure composed of heavy timbers and lumber fastened together; and long prior to said day the defendant, had erected, kept, and maintained, and did on said day keep and maintain, in the channel of said river, in a point in said Jackson County and opposite said city of Kansas, nearer the centre of said river than the structure first above named, a certain other structure, to wit: a crib or box built of heavy timbers filled with stone, which said crib or box extended from the bed of said river upward to a height of 30 feet or more above the surface thereof; that both of said structures were and always have been obstacles in the way of vessels passing by the same up and down said river, and have prevented and rendered the navigation of said river dangerous and unsafe; that said structures were so erected, kept, and maintained by the defendant wrongfully, wilfully, and in flagrant disregard and violation of the rights of plaintiff and others, to the free and unobstructed use of said river as a highway of commerce; that before the erection of said structures the current of said river, at and above and below the point where the same were located and erected, had been in a line nearly parallel to the faces of said structure, and the navigation of the same easy and safe.

"But plaintiff states that the structure first above mentioned had, on said 4th day of March, 1874, caused the current of the river at that point to change, so that it rushed with great velocity from the point of the location of said structure in a direction nearly at right angles to its former course towards and against said crib or box.

"And plaintiff states that on said 4th day of March, 1874, it was, in the course of its business, navigating said river with its said steamboat Alice, and while attempting, in the exercise of due care and caution, to run said boat by and between said structures, said boat was, without any fault of this plaintiff, by the current of the river, so changed as aforesaid, hurled violently against said crib or box, and the water-wheel, wheelhouse, and other parts of said boat broken, injured, and damaged.

"That plaintiff was compelled to, and did, expend large sums of money in repairing said injuries to said boat, and was, on account of the injuries thereto, wholly deprived of the use of the same and of the earnings thereof for the period of thirteen days, to plaintiff's damage in the sum of twenty-five hundred dollars, for which, with interest from the 1st day of April, 1874, plaintiff prays judgment against the defendant."

The second count was in substantially the same form, and alleged an injury to the St. Luke, another of plaintiff's vessels, occurring on the 15th day of September, 1874, and prayed judgment on account thereof in the sum of $ 3000.

To this petition the defendant below first interposed a plea to the jurisdiction of the court, alleging that the structures complained of, and each of them, were at the time of the injuries alleged in plaintiff's petition, and still are, a part of a bridge across the Missouri River at Kansas City, authorized by the act of Congress approved July 25, 1866, and constructed under and in accordance with the terms and provisions of said act by the Kansas City and Cameron Railroad Company, of which the defendant company below is the successor; that said bridge was wholly situated at the time of the injuries alleged in plaintiff's petition, and still is wholly situated, within the jurisdiction of the District Court of the United States for the Western District of Missouri, and that, by reason of the premises stated, said District Court has exclusive jurisdiction over the subject matter of this action.

This plea having been overruled by the court, and exceptions duly saved, the defendant answered. The answer consisted of (1) a general denial, and (2) a special defence, which latter was pleaded as a full and complete bar to the cause of action alleged in the petition, and is in substance as follows: That at the time of the injury complained of in plaintiff's petition, the defendant was, for a long time prior thereto had been, and still is, a corporation duly organized under the laws of the State of Missouri, and, as such corporation, acting as it was authorized to do by the terms of its charter, it had constructed a railroad from the town of Hannibal, in the State of Missouri, to the town of St. Joseph, in said State, and has been

ever since maintaining and operating said railroad; that the Kansas City and Cameron Railroad Company, a corporation duly organized under the laws of the State of Missouri, as it was authorized to do by the terms of its charter, had constructed a railroad from the north bank of the Missouri River, opposite said city of Kansas, to Cameron, on the Hannibal and St. Joseph Railroad; that Congress, by an act approved July 25, 1866, authorized the construction of a bridge across the Missouri River at or near Kansas City, and the Kansas City and Cameron Railroad Company, availing itself of this privilege, between the passage of said act of Congress and the 4th day of July, 1869, did construct such bridge at Kansas City; that the Kansas City and Cameron Railroad Company afterwards, to wit, on the 4th day of February, 1870, consolidated with the defendant company, whereby the defendant became the owner and proprietor of said bridge; that said bridge was and is a pivot draw-bridge, with a draw over the main channel of said Missouri River at an accessible and navigable point, and with spans of 160 feet in the clear on each side of the pivot pier of the draw, and the next adjoining spans to the draw were and are 30 feet above low-water mark and 10 feet above high-water mark, measuring to the bottom chord of said bridge, and the piers of said bridge were, at the times of location and construction thereof, parallel with the current of the said river; that the obstacles and obstructions (the structures) described in plaintiff's petition, and each of them, were at that time, and still are, parts and parcels of said bridge, and were and are necessary to the safe and secure maintenance of said bridge; that said bridge, ever since its completion, has been a post route; and that, by reason of the premises aforesaid, said bridge, ever since its completion, has been and still is a lawful structure, and, if plaintiff has sustained any damage in consequence thereof, it has been without any fault on the part of defendant, and the defendant is not legally liable therefor.

Plaintiff in its reply specifically denied every material allegation set up in the special defence of the defendant, and upon this state of the pleadings the case was tried by a jury, result-

ing in a verdict for plaintiff below on the first count in its petition, for $2400, and on the second, for $2900 — in all $5300 — upon which judgment was rendered.

Plaintiff thereupon excepted and appealed to the Supreme Court of the State of Missouri, relying mainly upon the question of jurisdiction in the court below, and upon certain alleged improper and illegal instructions given to the jury. The Supreme Court of the State, upon the questions material to a review of the case by this court, held, (1) That the Circuit Court of Jackson County, in which this action was commenced, had concurrent jurisdiction with the District Court of the United States for the Western District of Missouri in the case, and that therefore the plea to the jurisdiction was properly overruled by the Circuit Court; (2) That, while the piers of the bridge were constructed parallel with the current of the river as required by the act of Congress, in determining whether the spans of the bridge on each side of the pivot pier were 160 feet in length in the clear, as required by the act, the measurement should be made at right angles with the current, and not along the structure itself or on the line of the structure, and, inasmuch as the spans so measured were but 153 feet and a fraction in length, that therefore the structure causing the accident was not a lawful one.

The act of Congress, approved July 25, 1866, giving permission for the construction of the bridge under consideration, is found in volume 14 of the Statutes at Large, page 244, and the sections thereof material to a correct determination of the issue here are quoted in full below.

Section 1 provides for the erection of a bridge across the Mississippi River at Quincy, Illinois, and for the laying of railroad tracks on and over the same, etc. "And in case of any litigation arising from any obstruction or alleged obstruction to the free navigation of said river, the cause may be tried before the District Court of the United States of any State in which any portion of said obstruction or bridge touches."

"SEC. 2. *And be it further enacted,* That any bridge built under the provisions of this act may, at the option of the company building the same, be built as a draw-bridge, with a pivot

or other form of draw, or with unbroken or continuous spans: *Provided*, That if the said bridge shall be made with unbroken and continuous spans, it shall not be of less elevation in any case than fifty feet above extreme high-water mark, as understood at the point of location, to the bottom chord of the bridge, nor shall the spans of said bridge be less than two hundred and fifty feet in length, and the piers of said bridge shall be parallel with the current of the river, and the main span shall be over the main channel of the river, and not less than three hundred feet in length: *And provided also*, That if any bridge built under this act shall be constructed as a draw-bridge, the same shall be constructed as a pivot draw-bridge with a draw over the main channel of the river at an accessible and navigable point, and with spans of not less than one hundred and sixty feet in length in the clear on each side of the central or pivot pier of the draw, and the next adjoining spans to the draw shall not be less than two hundred and fifty feet; and said spans shall not be less than thirty feet above low-water mark, and not less than ten above extreme high-water mark, measuring to the bottom chord of the bridge, and the piers of said bridge shall be parallel with the cu  at of the river: *And provided also*, That said draw shall b opened promptly upon reasonable signal for the passage of boats whose construction shall not be such as to admit of their passage under the permanent spans of said bridge, except when trains are passing over the same; but in no case shall unnecessary delay occur in opening the said draw during or after the passage of trains.

"SEC. 3. *And be it further enacted*, That any bridge constructed under this act, and according to its limitations, shall be a lawful structure, and shall be recognized and known as a post route; upon which, also, no higher charge shall be made for the transmission over the same of the mails, the troops, and the munitions of war of the United States, than the rate per mile paid for their transportation over the railroads or public highways leading to the said bridge."

"SEC. 10. *And be it further enacted*, That any company authorized by the legislature of Missouri may construct a

bridge across the Missouri River, at the city of Kansas, upon the same terms and conditions provided for in this act."

The material facts in this case, as set forth clearly and dis- tinctly in the frank and able brief of counsel for plaintiff in error, are as follows :

" The undisputed evidence showed that the bridge was a pivot draw-bridge; that its piers were parallel with the cur- rent of the river, but that they were not at right angles with the current, and ranged diagonally across it; that as a conse- quence the superstructure of the bridge, erected on the piers, ran diagonally across the current of the river at an angle of 18 degrees; that measuring the spans between the piers, along the line or chord of the bridge, gave a distance of over 160 feet ; that the open space between the piers, at low-water mark, measured on the line of the bridge structure, was also over 160 feet ; but that a line measured at right angles with the current was only 153 feet and a fraction. It also appeared that the draw-bridge, when swinging open to permit the passage of boats, rested upon two timber structures, called upper and lower draw-rests, which had for their foundation. cribs sunk in the river and filled with rock. There was also an ice-breaker in front of the upper draw-rest, and forming a part of it. The draw-rests were connected with the pivot pier by cribs sunk in the water. These draw-rests, thus connected with the pivot pier, were situated near the middle of the river, parallel with the current, and all taken together extended up and down the river about the length of the draw, and were necessary parts of the structure. The upper draw-rest, with its ice-breaker attached, was what the petition designated as 'a certain other structure, to wit: a crib or box, built of heavy timbers filled with stone,' and was the structure with which the steamer came in collision. The evidence also tended to show that near the river bank, on the south side of the south draw opening, a row of pontoons was placed, ex- tending from pier No. 1, up the river about 340 feet to the shore, pier No. 1 being about sixty-five feet from the Kansas City shore, and being the pier on which the south end of the draw rested when in position. These pontoons were con-

structed of a number of flat boats from fifty-three to sixty-five feet in length, and from eighteen to twenty feet in width, chained together, so that their outer edge presented a straight line next to the channel.   On the trial it was not claimed that these pontoons were any part of the bridge.   They constituted what the petition called 'a certain structure composed of heavy timbers and lumber fastened together,' near the southern bank of the river.   It further appeared that the pontoons remained floating and in position until the latter part of the winter of 1873–4, when they sank.   The evidence for the plaintiff tended to show that they sank transversely, or in a direction quartering out into the river; that there was a cross-current, starting from near the south shore, above the head of the pontoons and running diagonally across the river, in the direction of the upper draw-rest; and that while the boats were attempting to pass the draw-bridge, in charge of skilful pilots, exercising ordinary care and skill, they were caught by the cross-current and hurled against the upper draw-rest and injured thereby.   On the other hand, the testimony for the defendant tended to show that no such cross-current existed, and that the injury to the boats occurred solely by reason of want of due care and skill of the pilots in the management of the boats."

The Supreme Court of the State of Missouri, in affirming the judgment of the Circuit Court of Jackson County, also ruled clearly that the distance of 160 feet between the piers of the bridge required by the act of Congress should be obtained by measuring along a line between said piers drawn perpendicular to the faces of the piers and the current of the river; and that as such line would measure but 153 feet and a fraction instead of 160 feet as required, the bridge was not a lawful structure within the meaning of the act.

The substance of the errors assigned and relied on here, relate (1) to the construction given by the state court to the second section of the act of July 25, 1866; and (2) to the ruling of the Supreme Court of the State, approving the giving of plaintiff's instruction No. 1.   The plaintiff in error makes no contention here as to the question of jurisdiction

urged in its behalf in the state courts, but, on the contrary, expressly states that it agrees with the decision of the Supreme Court of the State upon that question.

The sole question, therefore, for our decision relates to the construction given by the state court to that part of the act of Congress defining the manner in which the bridge should be built; *i.e.*, that the distance of 160 feet between the piers of the bridge, required by said act, should be obtained by measuring along a line between said piers, drawn perpendicularly to the faces of the piers and the current of the river, and that as such line would measure but 153 feet and a fraction, instead of 160 feet, as required, the bridge was not a lawful structure.

It is strenuously urged by the counsel for plaintiff in error that the bridge we are considering meets the express requirements of the statute; that the word "spans," as used in the statute, means the structures or parts of the bridge which span the river on each side of the pivot pier, and it is these spans which the statute says shall measure 160 feet in *length* in the clear on each side of the central or pivot pier of the draw ; and that the bridge having been constructed according to the requirements of the statute, in its own words, is therefore a legal structure; that the Supreme Court of Missouri, in declaring that "we must look to the spirit and reason of the act, the purpose of which manifestly was to reserve for the purposes of navigation 160 feet of open space in the clear, wholly unobstructed, and available for the passage of vessels," ignored the plain language of the provision, and inferred an intention contrary to that language; that there was nothing whatever in the statute to show any intention on the part of Congress to reserve "160 feet of open space in the clear, wholly unobstructed;" and that the act nowhere defines the precise direction of the bridge, but intrusted that direction to the discretion of the company.

We do not consider this sound reasoning. The statement that there is nothing whatever in the statute to show any intention on the part of Congress to reserve "160 feet of open space in the clear wholly unobstructed" is repelled by every provision in the act specifying the dimensions of the various

parts of the structure. The fact that Congress prescribed in said act such minute details concerning the manner in which the proposed bridge should be built, — the requirement that it should be constructed with a draw over the main channel of the river at an accessible and navigable point, the provision that the piers of said bridge should be parallel with the current of the river, that prescribing the height of the spans above the surface of the water — and the very rigid directions as to the opening of the draw upon reasonable signals, without delay, for the passage of boats, show how careful Congress was in preserving these navigable rivers as highways of commerce, and in guarding the interests of the public, and especially of those engaged in navigating the rivers that would be spanned by the structures authorized by said act.

We concur with the court below that we must look to the spirit and reason of this provision of the law, and construe it with reference to its evident purpose to connect with the exercise of the privileges therein granted such limitations as will guarantee protection to the navigating interests affected by the proposed legislation. Can it be said that the object and purpose of the law was simply that a bridge should be built across the Missouri River at Kansas City for the benefit of the railroad company alone? Manifestly not, for in that case it would have been only necessary to grant the privilege of building a bridge at the place designated without any limitation or condition as to its mode of construction, except such as the discretion of the company might determine.

In what we have said we do not wish to be understood as assenting to the proposition that the strict letter of the statute supports the contention of the plaintiff in error. The word "span" does not, even in architecture, always mean a part of a structure. It is, perhaps, as often used to denote the distance or space between two columns. Such is the obvious import of the term as used in the act under consideration, not merely as a part of the structure itself, but the measure of the distance between the piers of the bridge — the measure of the space left open for navigation purposes. A similar provision to this may be found in an act of the Illinois legislature author-

izing the construction of a bridge across a river, and the word "space" is used, where in this act we have the word "span."

It is said that the act nowhere defines the precise direction of the bridge, but leaves that to the discretion of the company. The answer to this is, that by the express terms of the act of Congress the piers of the bridge across the river are required to be placed parallel with the current. To the word "across," unless it is qualified by some prefix as *diagonally* or *obliquely*, there is attached, in ordinary use, but one meaning, and that is a direction opposite to length. This is especially true when it is used in connection with parallel lines. When the piers are placed parallel with the current of the river they are parallel with one another, and the faces of the piers may properly be considered as so many parallel planes. The spans of the bridge are to be less than 160 feet in length, *in the clear on each side* of the pivot pier of the draw — that is, from the face of the central pier to the face of the next adjacent pier must be a distance of not less than 160 feet in the clear. Now, it is an elementary principle of mathematics that "the distance between two parallel planes is measured on a perpendicular to both."

But if there be any doubt as to the proper construction of this statute, (and we think there is none,) then that construction must be adopted which is most advantageous to the interests of the government. The statute being a grant of a privilege, must be construed most strongly in favor of the grantor. *Gildart* v. *Gladstone*, 12 East, 668, 675; *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420, 544; *Dubuque and Pacific Railroad* v. *Litchfield*, 23 How. 66; *The Binghampton Bridge*, 3 Wall. 51, 75; *Rice* v. *Railroad Co.*, 1 Black, 358, 380; *Leavenworth, Lawrence and Galveston Railroad* v. *United States*, 92 U. S. 733; *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659.

As persuasive authority in support of the conclusion we have reached with reference to this bridge, may be cited the case of *Columbus Insurance Co.* v. *Peoria Bridge Co.*, 5 McLean, 70; also the case of *Missouri River Packet Co.* v. *Hannibal and St. Joseph Railroad*, 1 McCrary, 281, the latter being a decis-

ion of the Circuit Court of the United States for the Western District of Missouri in a case between the identical parties to this suit and concerning this identical bridge.

In this last case, Judge McCrary says: "If it be granted that a measurement along a line which deviates from a course directly across the channel is the proper one, then it would follow that the actual passage way might be less than that required by the act. The greater the deviation from such a direct line, the less would be the available space between the piers. Such a construction of the act would defeat the main purpose which Congress had in view in its enactment."

We are therefore of the opinion that the Supreme Court of the State of Missouri committed no error in its construction of the act of Congress under consideration.

A reversal of the judgment brought here for review is also asked upon the ground that the Supreme Court of Missouri erred in sustaining the Circuit Court of Jackson County in giving to the jury what is called "Plaintiff's Instruction No. 1." This instruction is as follows:

"The jury are instructed that unless the bridge mentioned in the answer had piers which were parallel with the current of the river, and spans of not less than 160 feet in the clear on each side of the pivot pier, then said bridge is an illegal structure and an unlawful obstruction to the navigation of the Missouri River; and if the jury believe from the evidence that it was not such a bridge, and further believe that the plaintiff's boats, Alice and St. Luke, or either of them, while attempting to pass through the draw of the bridge in charge of pilots exercising usual and ordinary care, struck the draw-rest of the bridge, and were thereby damaged, then the jury will find their verdict for the plaintiff as to such boat or boats."

It is said that by sustaining this instruction the Supreme Court of Missouri held that the mere fact that the bridge had not been constructed as required by the statute rendered the railroad company liable, irrespective of the question whether the improper construction caused the accident; and it is urged that such holding is erroneous.

This, however, does not present any federal question for

the consideration of this court, and therefore we decline to examine into its merits. *Murdock* v. *City of Memphis,* 20 Wall. 590; *Allen* v. *Mc Veigh,* 107 U. S. 433.

Upon the only questions in this case cognizable by this court, the judgment of the Supreme Court of the State of Missouri is

*Affirmed.*