## UNITED STATES v. GREAT NORTHERN RY. CO.

District Court, D. Montana, Great Falls Division.·

April 25, 1940.

John B. Tansil, U. S. Atty., of Billings, Mont., and Aubrey Lawrence, Sp. Asst. Atty. Gen., for plaintiff.

Weir, Clift & Bennett, of Helena, Mont., and F. G. Dorety, of St. Paul, Minn., for defendant Great Northern Ry. Co.

W. H. Hoover, L. V. Ketter, and J. E. Corette, Jr., all of Butte, Mont., for R. J. MacDonald as trustee, etc., intervener.

PRAY, District Judge.

A motion for judgment on the pleadings came on regularly for hearing in the above entitled cause and by agreement of counsel the issues are to be determined upon that motion, supported and opposed by briefs of counsel for the respective parties, including one filed under the application to intervene by Raymond J. MacDonald, as trustee.

This suit was begun pursuant to advices from the defendant, Great Northern Railway Company, that it proposed to drill oil wells on its right of way in Glacier County, Montana, through which the company maintained and operated an interstate line of railroad. The complaint filed herein seeks a permanent injunction restraining and enjoining the defendant company "from in any manner using the right of way granted as hereinbefore described, for the purpose of drilling for and removing oil, gas and minerals underlying its right of way except under a lease issued pursuant to the provisions of the said Act of May 21, 1930, and that a permanent injunction issue, restraining the defendant, the Great Northern Railway Company, from drilling for or removing any oil, gas or minerals beneath the surface of its right of way, crossing the lands hereinbefore described, or any other lands granted under the Act of March 3, 1875, and now owned or used by the said defendant except under a lease issued pursuant to the provisions of the said Act of May 21, 1930." 46 Stat. 373, 30 U.S.C.A. § 301.

In its answer the defendant company admits that it intends to drill for and remove the oil underlying the surface of its right-of-way, and denies that such oil or any part thereof is the property of the plaintiff, and denies that "the United States will be deprived of any property or that it will suffer any irreparable or other injury as a result of the defendant's intended action."

The principal issue arises over the interpretation to be given the Act of Congress of March 3, 1875, 18 Stat. 482, § 1, 43 U.S.C.A. § 934, which so far as it is of material interest here, is as follows: "The right of way through the public lands of the United States is granted to any railroad company duly organized under the laws of any State or Territory, except the District of Columbia, or by the Congress of the United States, which shall have filed with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road; also the right to take, from the public lands adjacent to the line of said road, material, earth, stone, and timber necessary for the construction of said railroad; also ground adjacent to such right of way for station buildings, depots, machine shops, side tracks, turnouts, and water stations, not to exceed in amount twenty acres for each station, to the extent of one station for each ten miles of its road."

The defendant company acquired its right of way by deed from its predecessor in interest, the St. Paul, Minneapolis and Manitoba Railway Company, to which latter company the original right of way was granted, and no question is raised as to the sufficiency of such conveyance or the rights of property, including the right of way, thereby acquired.

The defendant company contends that under the act aforesaid it was granted more than an easement—that its grant amounted to a limited fee, and that it thereby acquired an ownership of the oils and minerals underlying its right of way.

The plaintiff contends that the defendant was granted only an easement, or right to cross public lands of the United States, with no right whatever to the oils and minerals underlying the surface, and no question raised that at the time of the grant the company's right of way extended across public lands of the United States, and that the only statutes pertinent to the issue here involved are those of March 3, 1875 and May 21, 1930; the latter providing for the leasing of oil and gas deposits in or under lands embraced in railroad or other rights of way, and the Secretary of the Interior whenever he deems it consistent with the public interest is authorized to lease such deposits "whether the same be a base fee or mere easement." Plaintiff contends that the result here depends upon the interpretation given the Act of March 3, 1875, therefore the most important step in the first instance will be to determine, if possible, the legislative intent as disclosed by the debates and reports during the consideration and passage of the bill which later became the Act in question.

It appears that in 1874 the questions before Congress relating to this subject and

which resulted in the passage of the Act of March 3, 1875, had no relation to any bonus or grant of benefits, although at a former period Congress had granted lands or bonuses to aid in railroad development. Lengthy debates took place over the bill in question which granted an easement over both public and Indian lands, but that throughout these debates nothing was said to indicate that bonuses or benefits in the minerals or oils underlying the surface of the right of way was intended to be transferred, but only the right to cross public lands and Indian lands.

From the excerpts supplied by counsel for the government (Vol. 3, Pt. 1, 43rd Cong., 2nd Sess., Vol. 118, Cong.Rec. 404, 405, 406, 407) relating to debates on the bill, the intent of Congress seems to be clear and unmistakable and may be summed up in the statement of Mr. Hawley of Illinois who said during the debate: "It simply and only gives the right of way. It merely grants to such railroad companies as may be chartered the right to lay their tracks and run their trains over the public lands; it does nothing more," and also the following colloquy which took place during debate on the later measure: "Mr. Stafford: Do I understand that all of the land on these rights of way is owned by the government? Mr. Colton: The minerals under the land are owned by the government, but the owner of the right of way has a limited fee in the lands, an easement." Cong.Record, 71st Cong., 2nd Sess. Vol. 2, Part 4, Pages 3788 and 3789. These and other similar expressions disclosed during the debates would seem to preclude the idea that Congress intended to return to the abandoned policy of granting bonuses to railroads which seems to have come to an end with the grant to the Texas & Pacific in 1871, or that the act in question should be construed to mean anything more than a grant of right of way over the public lands.

In 1929 Secretary of the Interior Wilbur wrote the Senate Chairman of the Public Lands Committee favoring legislation to safeguard the rights of the government in deposits of oil and gas underlying easements and rights of way acquired under the public land laws, and enclosed a proposed bill for that purpose, adding that the owner of the easement or right of way had no claim to the oil or gas underneath. The House Committee report on the bill discloses the intent of the members thereof, authorizing a favorable report on the bill, wherein the following appeared:

"The owner of the easement of right of way has no claim to the oil or gas and by reason of the narrowness of the easement and right of way the underlying oil and gas can not be disposed of or operated in terms of normal subdivision or units as is done with other lands * * *.

"This bill would give the Secretary of the Interior authority to lease deposits of oil and gas in lands embraced in railroad and other rights of way to the owner of the right of way at a royalty to be fixed by the Secretary of not less than 12½ per cent * * *." House Report No. 263, 71st Congress, 2nd Sess.Doc. No. 9190.

Thus it appears that Congress again, fifty-five years later, reaffirmed its interpretation of the Act of March 3, 1875, in the Act of May 21st, 1930, providing for the leasing of oil and gas deposits in or under railroad and other rights of way. Excerpts from the debate on the bill taken from the Congressional record show confirmation of the original intent and purpose of the Act of 1875; among the participants in that debate was Senator T. J. Walsh of Montana, an eminent lawyer, who said: "The Government still owns the minerals under the right of way; it does not belong to the railroad company; but the wells in the adjacent lands are draining that oil without any return to the government of the United States."

The case of Tiger v. Western Investment Co., 221 U.S. 286, 306, 309, 31 S.Ct. 578, 55 L.Ed. 738, is an authority for consideration of subsequent legislation on the same subject matter to aid in the interpretation of the prior act; also Cope v. Cope, 137 U.S. 682, 11 S.Ct. 222, 34 L.Ed. 832; United States v. Freeman, 3 How. 556, 11 L.Ed. 724. The language of the Act is clear and explicit, and that, coupled with the intent of Congress so emphatically expressed, should leave no doubt as to the extent of the easement or right of way granted under the act, and half a century later Congress again considers the same subject and re-affirms the intent disclosed in the passage of the original act. Many authorities have been cited to confirm the doctrine that grants of this nature are to be strictly construed against the grantees; that nothing passes except what is conveyed in clear and explicit terms; that it is to be regarded as a grant by the public to a private

654

company, the terms of which must be plainly expressed in the statute, and if not plainly expressed, they can not be implied; nothing can be taken against the state by presumption or inference; all rights, privileges and immunities not expressly granted are reserved: In all doubtful cases the grant must be interpreted in favor of the sovereign. Charles River Bridge v. Warren Bridge, 11 Pet. 420, 9 L.Ed. 773; Dubuque & Pacific Railroad Company v. Litchfield, 23 How. 66, 88, 16 L.Ed. 500; Delaware Railroad Tax, 18 Wall. 206, 225, 21 L.Ed. 888; Coosaw Mining Co. v. South Carolina, 144 U.S. 550, 551, 12 S.Ct. 689, 36 L.Ed. 537; Hannibal, etc. Railroad v. Missouri River Packet Co., 125 U.S. 260, 271, 8 S.Ct. 874, 31 L.Ed. 731; Central Transportation Co. v. Pullman's Palace Car Co., 139 U.S. 24, 49, 11 S.Ct. 478, 35 L. Ed. 55; Stein v. Bienville Water Supply Co., 141 U.S. 67, 80, 11 S.Ct. 892, 35 L. Ed. 622; Slidell v. Grandjean, 111 U.S. 412, 437, 4 S.Ct. 475, 28 L.Ed. 321; Northern Pacific Railroad v. Soderberg, 188 U.S. 526, 534, 23 S.Ct. 365, 47 L.Ed. 575; Hamilton v. Rathbone, 175 U.S. 414, 419, 20 S.Ct. 155, 44 L.Ed. 219; Lake County v. Rollins, 130 U.S. 662, 670, 671, 9 S.Ct. 651, 32 L.Ed. 1060.

Many definitions have been given by counsel for the respective parties of the term "right of way" but the consensus of opinion seems to be that it means exactly what the words imply, that is to say, the right to use the grant of right of way for the purpose of constructing, maintaining, and operating a railroad thereon. For a comprehensive definition counsel have cited Kansas C. R. Co. v. Allen, 22 Kan. 285, 31 Am.Rep. 190, and adopted in East Tennessee, V. & G. R. Co. v. Telford, 89 Tenn. 293, 14 S.W. 776, 10 L.R.A. 855, also McLemore v. Charleston & Memphis R. Co., 111 Tenn. 639, 69 S.W. 338. The following definition is taken from 51 C.J. Sec. 193, P. 530: "The property rights of a railroad Company under an easement in its right of way extend upward for a space necessary for the use of its franchise and downward to a line of support for its tracks and superstructure." See also Lockwood v. Ohio River R. Co. et al., 4 Cir., 103 F. 243, 246, 247; Midland Valley R. Co. v. Corn, et al., D.C., 21 F.2d 96, 97, 98, 99; United States v. Sweet, 245 U.S 563, 38 S.Ct. 193, 62 L.Ed. 473. In the latter case the court held as an indication of established policy on pages 569, 572 of 245 U.S., 38 S.Ct. on page 194, 62 L.Ed. 473: "* * * noticeable among those acts is one which, in dealing with grants to Nevada and surveys in that state, declared, 'in all cases lands valuable for mines of gold, silver, quicksilver, or copper shall be reserved from sale,' chapter 166, § 5, 14 Stat. [85], 86 [30 U.S.C.A. § 21], and another declaring, 'no act passed at the first session of the Thirty-Eighth Congress, granting lands to states or corporations, to aid in the construction of roads or for other purposes, or to extend the time of grants heretofore made, shall be so construed as to embrace mineral lands, which in all cases shall be, and are, reserved exclusively to the United States, unless otherwise specially provided in the act or acts making the grant.' 13 Stat. 567. Although applied in one instance to lands in Nevada and in the other to grants made at a particular session of Congress, these declarations were but expressive of the will of Congress that every grant of public lands, whether to a state or otherwise, should be taken as reserving and excluding mineral lands in the absence of an express purpose to include them; * * *." Other cases therein cited support that rule: Ivanhoe Mining Co. v. Consolidated Mining Co., 102 U.S. 167, 174, 26 L.Ed. 126; Deffeback v. Hawke, 115 U.S. 392, 402, 6 S.Ct. 95, 29 L. Ed. 423; Davis v. Weibbold, 139 U.S. 507, 516, 11 S.Ct. 628, 35 L.Ed. 238; Dunbar Lime Co. v. Utah-Idaho Sugar Co., 8 Cir., 17 F.2d 351. In Northern Pacific Ry. v. Townsend, 190 U.S. 267, 271, 23 S.Ct. 671, 673, 47 L.Ed. 1044, the court construed an act similar to that of March 3, 1875, where a homesteader attempted to acquire a portion of a railroad right of way by adverse possession, and wherein the court held: "The whole of the granted right of way must be presumed to be necessary for the purposes of the railroad, as against a claim, by an individual of an exclusive right of possession for private purposes." This ruling would seem to prohibit the use of the right of way for any other purpose than that for which it was granted. And again the court held in the same case: "The substantial consideration inducing the grant was the perpetual use of the land for the legitimate purposes of the railroad, just as though the land had been conveyed in terms to have and to hold the same so long as it was used for the railroad right of way. In effect the grant was of a limited fee, made on an implied condition of reverter in the event that

the company ceased to use or retain the land for the purpose for which it was granted."

In some instances the same cases have been cited and relied upon by both sides, such as Great Northern Railway Co. v. Steinke, 261 U.S. 119, 43 S.Ct. 316, 67 L.Ed. 564, and Northern Pacific Railway Co. v. Townsend, supra. Voluminous briefs have been submitted by counsel for the defendant railway company, touching every possible phase of the case, both near and remote, but there is one prominent feature upon which they seem to have placed too little importance, and that is the intent of Congress disclosed by the reports and debates during the consideration and passage of the act. The court has referred to the Steinke case and commented on the Townsend case; in the former it was held [261 U.S. 119, 43 S.Ct. 318, 67 L.Ed. 564]: "Nothing was granted for private use or disposal, nor beyond what Congress deemed reasonably essential, presently or prospectively, for the quasi public uses indicated."

The defendant takes the position that Congress studiously refrained from excepting minerals from the act in question and that failure to do so indicated a deliberate purpose. Defendant refers to it as land granted or as a land grant, while the court has considered it an easement for right of way which was granted the company in accordance with a settled policy, which did not extend to drilling for oil underneath the right of way, but did permit the taking of material, earth, stone and timber from public lands adjacent to the line of road "necessary for the construction of said railroad." But such taking would not be allowed "for the purpose of constructing rolling stock or equipment employed in its transportation business." United States v. Denver & Rio Grande Railway Co., 150 U.S. 1, 13, 14, 15, 14 S.Ct. 11, 16, 37 L.Ed. 975. Reference is made to the interpretation given similar statutes by the Interior Department which seem worthy of consideration; these cases relate to grants of right of way to the Missouri, Kansas and Texas Ry. Co., 33 L.D. 470 and 34 L.D. 505, wherein it was held that mineral oils underneath the right of way were part of the realty (Act of February 28, 1902, Sec. 13, 32 Stat. 43), and in a grant of right of way under the act of July 26th, 1866, 14 Stat. 289, it was decided that the grantee had no authority under its grant of right of way to lease any portion thereof to sink oil wells.

The application to intervene was considered at the hearing on the motion for judgment on the pleadings, and was allowed subject to further consideration of the objections interposed by plaintiff. As it then appeared to the court there was a claim of interest by all parties in the oil supposed to be underlying the right of way. However, the plaintiff has seriously challenged the right of R. J. MacDonald, trustee, to intervene. From the argument of counsel for intervener it does not matter whether the right of way is an easement with attributes of a fee or is a limited fee, that these are but terms of tenure and do not define the quantity of the estate granted; that where a grant is limited in its use for railroad right of way it is a limited fee, and "under the Act of 1875 if it is an easement it is the right to use so much of the surface and sub-surface as is necessary for a railroad right of way. If it is a limited fee it is a grant of so much of the land as is necessary to be used for a railroad right of way, the grant to terminate when the user ceases. This use only requires the surface and so much of the sub-surface as might be necessary to be used for the right of way. Whatever the tenure, the underlying minerals did not pass by the grant to the railroad company", and in the opinion of the court counsel for the intervening trustee have presented a convincing argument to sustain their contention in that respect. Some of the cases relied upon by counsel for the plaintiff have been cited in support of the same argument by counsel for the trustee against the right claimed by the defendant railway company to use of the minerals underneath the right of way. After demonstrating that the railway company has no right to remove the minerals so situated, the trustee then contends that such minerals within the 200-foot strip passed from the plaintiff to the patentee by virtue of the patent upon which the trustee bases his claim, coupled with certain language of the act of March 3rd, 1875, § 4, 43 U.S.C.A. § 937, which reads as follows: "thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way * * *." Before passing to a consideration of the merits of intervener's cause, the arguments in briefs of counsel for both sides in respect to the right of the trustee to intervene must be given further attention. The first and

perhaps the principal objection to intervention is the claim made by the trustee to ownership of the minerals in question, at the same time seeking a judgment or decree against the United States in recognition of such claim. Here the objection becomes two-fold, as it appears to be not only a substitution of the intervener for the defendant but likewise a suit against the United States without its consent, accomplished by indirection by alleging a claim of ownership against the United States in a cross bill. Although the intervener's complaint presents the appearance of being a suit against the defendant railway company, it nevertheless asks for a decree which if rendered would result in quieting title to the property in the trustee and in making an adverse ruling against the government. There could be no distinction between suits against the United States directly and suits against its property. Whoever sues the United States must bring his case within the authority of some act of Congress. Belknap v. Schild, 161 U.S. 10, 16, 17, 16 S.Ct. 443, 40 L.Ed. 599; Stanley v. Schwalby, 147 U.S. 508, 512, 13 S.Ct. 418, 37 L.Ed. 259.

█ Again, the Supreme Court has held that the question whether the United States is a party to a controversy is not determined by the merely nominal party on the record but by the question of the effect of the judgment or decree which can be entered. Minnesota v. Hitchcock, 185 U.S. 373, 385, 387, 22 S.Ct. 650, 46 L.Ed. 954. On this subject the court again held in Lynch v. United States, 292 U.S. 571, 582, 54 S.Ct. 840, 845, 78 L.Ed. 1434; that: "The sovereign's immunity from suit exists whatever the character of the proceeding or the source of the right sought to be enforced. It applies alike to causes of action arising under acts of Congress." Mr. Chief Justice Taft held in Nassau Smelting & Refining Works, Ltd. v. United States, 266 U.S. 101, 106, 45 S.Ct. 25, 69 L.Ed. 190, in respect to suing the United States: "The objection to a suit against the United States is fundamental, whether it be in the form of an original action, or a set-off, or a counterclaim. Jurisdiction in either case does not exist, unless there is specific congressional authority for it."

If a judgment were allowed under a plea of set-off, that would be in effect permitting the United States to be sued. Reeside v. Walker, 11 How. 272, 52 U.S. 272, 289, 290, 13 L.Ed. 693. Many other decisions and rules on the subject of intervention are to be found, but the foregoing appear to be sufficient for a determination of the issue here.

Counsel for the intervener have presented an able discussion of the right to intervene as well as of the merits of the case. However, while rule 24 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, may disclose some improvement in the liberalization of practice in intervention, the argument presented by plaintiff in opposition to intervention, in view of the facts not in dispute, appear to be reasonable, supported by ample authority and not in conflict with the new rule.

If in some other suit the trustee should be able to establish his right to take oil and minerals from underneath the railroad right of way based upon a patent from the government, that possibility does not seem to present any sound reason why the plaintiff should not proceed to restrain the defendant railway company from taking property not included in the grant of right of way, based upon a federal statute. The court would prefer to dispose of the questions raised by the intervener now and in this suit, to avoid delay, but the law does not appear to favor such course of procedure.

After considering the arguments of counsel, and the statutes and authorities submitted, there seems to be no doubt as to the proper interpretation to be given the act of March 3, 1875, aided by the subsequent act of May 21, 1930, relating to the same subject-matter, drawn as they were in plain and unequivocal terms, supported by evidence of Congressional intent in the consideration and passage of both measures, with the background of a settled policy of Congress to reserve mineral lands unless expressly included. The court is therefore unable to find the grant of any bonus or limited fee or any statute or authority which would justify a decision holding that the defendant railway company, under this statute, is entitled to remove oil or minerals lying underneath the railroad right of way.

Wherefore, being duly advised, the court is of the opinion that the application for intervention should be denied, the motion of plaintiff for judgment on the pleadings should be granted, and that injunctive relief should be given according to prayer of complaint, and it is so ordered.