(C. D. 1236)

## C. E. DURNELL *v*. UNITED STATES

United States Customs Court, Third Division

(Decided April 18, 1950)

*Lawrence, Tuttle & Harper* (*George R. Tuttle* and *Charles J. Evans* of counsel) for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

JOHNSON, Judge:  This action covers two entries of horses imported from Mexico. The protest numbered 131433–K pertains to horses bearing the names "L'Ondee" and "Liberante." By amendment, it was claimed that the horses in question should have been classified under paragraph 1615, Tariff Act of 1930, as American goods returned, or under the provisions of 19 U. S. Code § 194, 19 U. S. Code § 195, or 19 U. S. Code § 1201. Protest 131434–K involves two horses "Incansable" and "Swingy Wingy" and one horse named "Great Wall." The protest claimed that these horses were free of duty as American goods returned. By amendment thereof it was further claimed that the horse "Great Wall" was free of duty under the provisions of 19 U. S. Code § 194, 19 U. S. Code § 195, or 19 U. S. Code § 1201. Duty was assessed upon the horses at the rate of 17½ per centum ad valorem under the provisions of paragraph 714 of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom, T. D. 49753.

At the trial the claim relied upon was confined to 19 U. S. Code §194. It was established that the regulations attending free entry under paragraph 1615 were not complied with as to the horses "Liberante," "Incansable," and "Swingy Wingy." It was admitted that the horses "L'Ontee" and "Great Wall" were of foreign origin.

Section 194 of the United States Code provides as follows:

**§194.  Return free of articles and livestock exported for exhibition.**

Whenever any article or articles or livestock shall be sent out of the United States for temporary use or exhibition at any public exposition, fair, or conference, held in a foreign country, such articles shall be entitled to be returned to the United States, under such regulations as may be prescribed by the Secretary of the Treasury, without the payment of customs duty, whether they shall be of domestic or of foreign production: *Provided,* That the articles of foreign production have once paid duty in the United States and no drawback has been allowed thereon, and if any domestic articles are subject to internal-revenue tax, such tax shall be proved to have been paid before exportation and not refunded.

The plaintiff testified that he shipped "Great Wall" to Mexico in 1943 for racing purposes and kept him there 2 years before returning him to the United States, racing him quite continuously; that the horse was used "Just for the public to see and race at the race track or the fair, or whatever you might call it there"; and that he raced him in the fall and the spring.

The witness more specifically described the nature of the use to which "Great Wall" was put in Mexico by the following testimony:

Q.  I would like you to describe the nature of the racing or the place where the racing, if there is more than one place say so, where the racing occurred?—A.   It occurred at the new race track at Mexico City, and they race there during each half—each year from October 12 until the following March, during the wintertime and during the summer when there weren't any races, I left him there on a ranch, and then I went back again the next fall and raced him again, and when the races started here in California, I brought him back here.   (Record p. 5.)

The witness further testified that he acquired "L'Ondee" while he was in Mexico through a custom known as "claiming" in racing circles, from one Charlie Ehar who had brought her from South America.

The deputy collector, John C. Townsend, testified for the plaintiff that he was in charge of the liquidating division in Los Angeles and that Mr. Durnell filed a certificate of exportation for the mare "L'Ondee" showing when and where and by whom she was exported. The witness further testified that the certificates attending the free entry under section 194, *supra,* were also filed for the horses in question.   All of these certificates were admitted in evidence.

The plaintiff claims that the phrase "for temporary use or [for] exhibition" appearing in the statute is intended to mean that the use may be either temporary or for exhibition.   Alternatively, it is further contended that the word "temporary" is used in contradistinction to an intent that the exportation be permanent.   The Government contends that horse racing is not an exhibition and the horses must be used in the manner stated by the statute in order to be granted free entry; and that the horses were not used or exhibited at a public exposition, fair, or conference, but instead, were entered and actually took part in racing at a regular race track.

Section 194, *supra*, extends entry without the payment of duty solely to livestock sent out of the country for temporary use or exhibition at any public exposition, fair, or conference held in a foreign country and thereafter returned to the United States. The words "temporary use" are used in connection with public exposition, fair, or conference as well as the word "exhibition." The lexicographers define an exposition as—

A public exhibition or show, as of industrial and artistic productions;   *   *   *

and a fair as—

A competitive exhibition of wares, farm products, etc., not primarily for purpose of sale, and usually with premiums for excellence   *   *   *

A conference is defined as—

An association, of firms in the same business, for carrying out a common policy. [Webster's New International Dictionary, 2d ed.]

As the evidence before us establishes that the horses in question were intended for use and were used primarily for horse racing, which is a well-known sport of running horses in competitions of speed, such use cannot fairly be said to come within the language of the statute. Had Congress intended to include horses which were shipped abroad for racing purposes it easily could have done so.

The exemption from duty in question is a grant of a privilege for articles otherwise dutiable provided they were exported for certain specified purposes. It has long been held that a governmental grant of a privilege or benefit is to be construed in case of doubt in favor of the Government and against the party claiming the grant. See *Swan & Finch Co.* v. *United States*, 190 U. S. 143; *Hannibal &c. Railroad Co.* v. *Packet Co.*, 125 U. S. 260, 271.

Counsel for the Government in his well-prepared brief cites extensively from the legislative hearings at the time the section in question was considered by the Congress. These hearings clearly indicate that the intent of Congress was to provide solely for the free entry of articles or livestock for exhibition purposes, and that our law-making body had no intention of including therein animals to be used in the sport of professional horse racing. The words "temporary use" and "exhibitions" are words of limitation to the use of articles or livestock at public exhibitions, fairs, or conferences. Even though horse racing was among the attractions at such public exhibitions, fairs, etc., the animals so used would not come within the grant of exemption provided for in section 194, *supra*.

For the reasons stated, judgment will be entered in favor of the Government.